PEOPLE v DOUGLAS

Docket No. 301546. Submitted January 5, 2012, at Detroit. Decided April
12. 2012, at 9:00 a.m.

Jeffery Alan Douglas was convicted of first-degree criminal sexual
conduct (victim under the age of 13) and second-degree criminal
sexual conduct (victim under the age of 13) following a jury trial in
the Lenawee Circuit Court, Margaret M. S. Noe, J. The charges
arose from statements by his daughter, KD, that defendant had
made her touch his penis on one occasion and had her perform
fellatio on a separate occasion. Defendant appealed, challenging
the admission of certain testimony and claiming the ineffective
assistance of counsel.

The Court of Appeals *held*:

1. Under MRE 803A, the tender-years hearsay exception, a
statement describing an incident that included a sexual act per-
formed with or on the declarant by the defendant or an accomplice
is admissible to the extent that it corroborates testimony given by
the declarant during the same proceeding, if (1) the declarant was
under the age of 10 when the statement was made, (2) the
statement is shown to have been spontaneous and without indica-
tion of being manufactured, (3) either the declarant made the
statement immediately after the incident or any delay is excusable
as having been caused by fear or other equally effective circum-
stance, and (4) the statement is introduced through the testimony
of someone other than the declarant. If the declarant made more
than one corroborative statement about the alleged incident, only
the first is admissible under MRE 803A. Questioning by an adult
is not incompatible with a ruling that a child's hearsay statement
was spontaneous under MRE 803A. For a child's report of sexual
abuse to have been spontaneous, the child must have broached the
subject of sexual abuse and any questions from adults must have
been nonleading or open-ended.

2. Defense counsel failed to object to the admission of KD's
hearsay statement to Jennifer Wheeler during a forensic interview
at Care House. The statement—that defendant made her "suck his
peepee"—should not have been admitted under MRE 803A(2),
because it was not spontaneous. Wheeler prompted KD during the

interview, KD had already talked with her therapist about the alleged sexual abuse, and KD's mother had told her during the drive to Care House that KD was going to be interviewed. KD's statement to Wheeler was also not admissible under MRE 803A(3) because there was no indication that the almost one-year delay in making the statement had been caused by fear or another equally effective circumstance. KD's young age, without more supporting testimony, was not an equally effective circumstance that would explain the lack of disclosure for such a long time. The statement was also inadmissible under MRE 803A because KD's first corroborative statement was to her mother, not to Wheeler during the interview at Care House.

3. While KD's statement to Wheeler that she and her stepsister had touched defendant's penis on another occasion was the first corroborative statement regarding that incident, it was inadmissible under MRE 803A because it was not spontaneous and there was no indication that the almost one-year delay in making the statement had been caused by fear or another equally effective circumstance.

4. The trial court erred by admitting over defense objection the videotape of KD's Care House interview because KD's statements to Wheeler were inadmissible under MRE 803A. The testimony of KD's mother regarding KD's statement to her about the alleged incident of fellatio with defendant, admitted without objection, was also inadmissible under MRE 803A.

5. It is improper for a witness to comment or provide an opinion on the credibility of another witness because credibility matters are to be determined by the jury. Without objection from defense counsel, Michigan State Police Detective Sergeant Gary Muir testified about a recorded conversation that KD's mother had with defendant at Muir's request. Muir improperly vouched for KD's credibility when he testified about the mother's conversation with defendant regarding the sexual abuse allegations and about the mother's comment to defendant that KD does not lie. The unchallenged testimony of a Child Protective Services worker that she would not have filed the petition against defendant in a child protective proceeding if she had not believed and substantiated KD's allegations and that there was no indication that KD was being untruthful was similarly inadmissible because she directly commented on KD's credibility and bolstered the allegations against defendant.

6. To establish a claim of ineffective assistance of counsel, a defendant must demonstrate that counsel's representation fell below an objective standard of reasonableness and that there

exists a reasonable probability that, absent counsel's errors, the result of the proceeding would have been different. The cumulative effect of several errors can constitute sufficient prejudice to warrant reversal when any one of the errors alone would not merit reversal. A new trial is warranted if the combination of errors denied the defendant a fair trial. The cumulative effect of the errors must undermine the confidence in the reliability of the verdict before a new trial is granted. There is a strong presumption that counsel's performance constituted sound trial strategy, and a particular trial strategy does not constitute ineffective assistance merely because it does not work.

7. Defendant was denied the effective assistance of counsel because of his counsel's failure to object to the hearsay testimony of multiple witnesses, the improper admission of KD's Care House interview, and the testimony that improperly bolstered KD's credibility fell below an objective standard of reasonableness. Defense counsel's failure to object to the testimony did not support his trial strategy—convincing the jury that KD was not believable—because the witnesses' testimony was consistent and did not demonstrate that KD gave different versions of events. Further, defense counsel failed to impeach KD with her preliminary examination testimony, which contradicted some of her trial testimony and would have supported defense counsel's trial strategy. The cumulative effect of the errors undermined confidence in the reliability of the verdict.

8. A defendant's Sixth Amendment right to counsel extends to the plea-bargaining process. A claim of ineffective assistance of counsel may be based on counsel's failure to properly inform the defendant of the consequences of accepting or rejecting a plea offer. The defendant must show that there was a reasonable probability that the plea offer would have been presented to the court, that the court would have accepted its terms, and that the conviction, sentence, or both would have been less severe than under the judgment and sentence in fact imposed. Counsel's assistance must be sufficient to enable the defendant to make an informed and voluntary choice between trial and a guilty plea. When charged with a crime having a mandatory minimum sentence, a defendant must receive information regarding the mandatory minimum sentence to make an informed decision whether to accept the prosecution's plea offer. Defendant was offered the option of pleading guilty to fourth-degree criminal sexual conduct on the morning of trial. Defendant's counsel advised him that he would receive at most 10 months in jail with the requirement that he register as a sex offender and erroneously informed defendant that he could receive up to a 20-year sentence if convicted of first-

degree criminal sexual conduct, but would most likely receive a minimum sentence between 5 and 8 years. Defense counsel's failure to inform defendant that he would receive a 25-year mandatory minimum sentence if convicted of first-degree criminal sexual conduct fell below an objective standard of reasonableness and resulted in the ineffective assistance of counsel. Defendant maintained that he would have accepted the plea offer had he known about the mandatory minimum sentence and established prejudice through the more severe sentences imposed.

9. Because defendant was denied the effective assistance of counsel at both the plea bargain and trial stages his convictions and sentences had to be vacated and the case remanded for the prosecution to reinstate the plea offer made immediately before trial. If defendant refused to accept the plea, he would be eligible for a new trial.

Convictions and sentences vacated; case remanded.

RONAYNE KRAUSE, J. concurring, agreed with the majority in all respects, with the exception that she would have held that KD's statement to her mother was admissible under MRE 803A(3). Fear or some analogue thereof is not the only basis for excusing a delay under MRE 803A(3). Rather, by also excusing delay for an "other equally effective circumstance," the rule requires any circumstance that would be similar in its effect on a victim as fear in inducing a delay in reporting, not a circumstance that is necessarily similar in nature to fear. Nor does the rule require that the defendant have created the equally effective circumstance. Given her age, KD might not have understood the concept of time or understood why the abuse was something she should have reported.

1. EVIDENCE — HEARSAY — TENDER-YEARS EXCEPTION.

The tender-years hearsay exception provides that a statement describing an incident that included a sexual act performed with or on the declarant by the defendant or an accomplice is admissible to the extent that it corroborates testimony given by the declarant during the same proceeding if (1) the declarant was under the age of 10 when the statement was made, (2) the statement is shown to have been spontaneous and without indication of being manufactured, (3) either the declarant made the statement immediately after the incident or any delay is excusable as having been caused by fear or other equally effective circumstance, and (4) the statement is introduced through the testimony of someone other than the declarant; if the declarant made more than one corroborative statement about the alleged incident, only the first is

admissible; questioning by an adult is not incompatible with a ruling that a child's hearsay statement was spontaneous; for a child's report of sexual abuse to have been spontaneous, the child must have broached the subject of sexual abuse and any questions from adults must have been nonleading or open-ended; a child's young age, without more supporting testimony, does not constitute an equally effective circumstance that would explain the lack of disclosure for a lengthy period and excuse the delay (MRE 803A).

2. CRIMINAL LAW — EFFECTIVE ASSISTANCE OF COUNSEL — CUMULATIVE ERROR.

The cumulative effect of errors can constitute sufficient prejudice to warrant reversal on the ground of ineffective assistance of counsel when any one of the errors alone would not merit reversal; a new trial is warranted if the combination of errors denied the defendant a fair trial; the cumulative effect of the errors must undermine the confidence in the reliability of the verdict before a new trial will be granted.

3. CRIMINAL LAW — EFFECTIVE ASSISTANCE OF COUNSEL — PLEA-BARGAINING PROCESS — MANDATORY SENTENCES.

A defendant's Sixth Amendment right to counsel extends to the plea-bargaining process; an ineffective-assistance-of-counsel claim may be based on counsel's failure to properly inform the defendant of the consequences of accepting or rejecting a plea offer; the defendant must show that there is a reasonable probability that the plea offer would have been presented to the court, that the court would have accepted its terms, and that the conviction, sentence, or both would have been less severe than under the judgment and sentence in fact imposed; counsel's assistance must be sufficient to enable the defendant to make an informed and voluntary choice between trial and a guilty plea; a defendant must receive information regarding a mandatory minimum sentence to make an informed decision whether to accept the prosecution's plea offer.

*Bill Schuette*, Attorney General, *John J. Bursch*, Solicitor General, and *Jonathan L. Poer*, Prosecuting Attorney, for the people.

*Joan Ellerbusch Morgan* for defendant.

Before: DONOFRIO, P.J., and STEPHENS and RONAYNE KRAUSE, JJ.

PER CURIAM. Defendant appeals as of right his jury trial convictions of first-degree criminal sexual conduct (CSC), MCL 750.520b(1)(a) (victim under 13 years of age), and second-degree CSC, MCL 750.520c(1)(a) (victim under 13). Because defendant was denied the effective assistance of counsel during both the pretrial and trial proceedings and the cumulative effect of the trial errors denied him a fair trial, we vacate his convictions and sentences and remand to the trial court for reinstatement of the prosecution's plea offer. If defendant refuses to accept the offer, he is entitled to a new trial.

## I. TRIAL ERRORS

Defendant argues that the trial court erroneously admitted the testimony of several witnesses as well as a videotape of the child complainant's Care House interview. Some of defendant's claims of error are preserved for our review and some are not. "To preserve an evidentiary issue for review, a party opposing the admission of evidence must object at trial and specify the same ground for objection that it asserts on appeal." *People v Aldrich*, 246 Mich App 101, 113; 631 NW2d 67 (2001). We review for an abuse of discretion a preserved challenge to the admission of evidence. *People v Orr*, 275 Mich App 587, 588; 739 NW2d 385 (2007). "A trial court abuses its discretion when it chooses an outcome that is outside the range of reasonable and principled outcomes." *Id.* at 588-589. This Court reviews for plain error unpreserved challenges regarding the admission of evidence that affected the defendant's substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). When considering an unpreserved error, a reviewing court will reverse "only when the defendant is actually innocent or the error seriously

affected the fairness, integrity, or public reputation of judicial proceedings." *Id.* at 774.

Defendant contends that the trial court erred by admitting, under MRE 803A, Jennifer Wheeler's testimony regarding the statements that the child, KD, made to Wheeler during an interview at Care House. MRE 803A, the "tender years" hearsay exception, states in relevant part:

> A statement describing an incident that included a sexual act performed with or on the declarant by the defendant or an accomplice is admissible to the extent that it corroborates testimony given by the declarant during the same proceeding, provided:
>
> (1) the declarant was under the age of ten when the statement was made;
>
> (2) the statement is shown to have been spontaneous and without indication of manufacture;
>
> (3) either the declarant made the statement immediately after the incident or any delay is excusable as having been caused by fear or other equally effective circumstance; and
>
> (4) the statement is introduced through the testimony of someone other than the declarant.
>
> If the declarant made more than one corroborative statement about the incident, only the first is admissible under this rule.

Defendant contends that Wheeler's testimony was inadmissible under MRE 803A because (1) the statements were elicited during a forensic interview and were therefore not spontaneous, (2) the statements were made more than one year after the alleged incidents and there is no indication that fear or another equally effective circumstance caused the delay, and (3) the statements should not have been "broken up" into two segments regarding each of the alleged acts. Because defendant did not challenge

the admissibility of the statements on this basis below, that argument is not preserved for our review. Having reviewed the record, we conclude that Wheeler's testimony regarding KD's statements was not properly admissible under MRE 803A.

Whether KD's statements to Wheeler were "spontaneous" within the meaning of MRE 803A is a close question. In *People v Gursky*, 486 Mich 596, 614; 786 NW2d 579 (2010), our Supreme Court held that questioning by an adult "is not incompatible with a ruling that the child produced a spontaneous statement." The Court explained, however, that "for such statements to be admissible, the child must broach the subject of sexual abuse, and any questioning or prompts from adults must be nonleading or open-ended in order for the statement to be considered the creation of the child." *Id.* KD broached the subject of sexual abuse after Wheeler told KD that children tell her things that have happened to them, including secrets and things that people tell the children not to say. Wheeler and KD engaged in the following discussion:

> *Ms. Wheeler*: Well, you know what, [KD], I'm gonna tell you a little bit about me and this place here, okay? All right. My name's Jennifer just in case you forgot that. This place here is called Care House, and we call it Care House not because anyone lives here—
>
> *[KD]*: Um-hum.
>
> *Ms. Wheeler*: —just because everyone who works here really cares about kids. You know what my job is here at Care House?
>
> *[KD]*: M-mm.
>
> *Ms. Wheeler*: It's to listen and talk with kids. That's what I do every single day all day long. I talk to little kids. I talk to older kids like you. Sometimes even teenagers.
>
> *[KD]*: Teenagers?

*Ms. Wheeler*: Yeah, teenagers. And when I talk to kids, they tell me everything. They tell me about their friends and their families. They tell me about their moms and their dads. They tell me about things that happen to them. Things that they saw. Things that they heard. They tell me about worries and problems. They tell me about secrets. They even tell me about things that people tell them not to tell, and that's okay because as long as you talk to me today, you get to tell me anything and everything that you want. Okay?

[*KD*]: Know what, my daddy makes me suck his peepee.

Considering Wheeler's prompting, the fact that KD had already talked to her therapist about the alleged sexual abuse, and the fact that KD's mother had told her during the 45- to 60-minute drive that she was going to be interviewed, KD's statements to Wheeler were arguably not spontaneous.

More certain for purposes of MRE 803A is that KD's statements to Wheeler were not made immediately after the incidents and there is no indication that the delay was caused by fear or another "equally effective circumstance." In fact, KD did not make the statements until approximately one year after the alleged incidents. KD's mother testified that KD had told her about the sexual abuse "out-of-the-blue" while they were in the car. KD's Care House interview occurred soon thereafter. The prosecution suggests that the delay was excusable because of KD's "extreme youth," but nothing in the record indicates that KD's age was a reason for the delay. We note that KD was approximately 3$^1$/$_2$ years old at the time of the alleged incidents and did not disclose the abuse for approximately one year. KD's youth, without more, is not an equally effective circumstance that sufficiently explains why she did not disclose the abuse for such a long time. Without any explanation regarding the cause of the delay, let alone an indication

that fear or a similar circumstance was the reason for the delay, KD's statements to Wheeler were inadmissible under MRE 803A(3). A trial court abuses its discretion when it admits evidence that is legally inadmissible as a matter of law. *Gursky*, 486 Mich at 606.

KD's statement to Wheeler regarding sucking defendant's "peepee" was also inadmissible under MRE 803A because it was not KD's first corroborative statement about that incident. KD made the first corroborative statement about that incident to her mother rather than Wheeler. Thus, Wheeler's testimony that KD told her that defendant made her suck his "peepee" was inadmissible under MRE 803A.

Wheeler also testified that KD told her that she and her stepsister had touched defendant's penis on one occasion. This incident was separate from the incident during which the alleged oral sex occurred. While KD's statements regarding the touching incident were the first corroborative statements regarding that incident, Wheeler's testimony regarding the statements was nevertheless inadmissible because not all the requisites of MRE 803A were satisfied, as discussed earlier. Thus, KD's statements to Wheeler regarding both incidents were inadmissible under MRE 803A.

Defendant next argues that the trial court erred by admitting the videotape of KD's Care House interview. Over defense counsel's objection that the videotape was inadmissible under MRE 803A, the video was played before the jury. Because KD's statements to Wheeler, depicted in the video, were inadmissible under MRE 803A, the admission of the videotape was also erroneous.[1]

---

[1] We reject the prosecution's argument that KD's statements to Wheeler and the videotape were admissible under MRE 803(24), the "catchall exception" to the hearsay rule. To be admissible under that rule, a statement must have "circumstantial guarantees of trustworthiness equivalent to

Defendant next contends that KD's credibility was improperly bolstered when the trial court admitted the hearsay testimony of KD's mother, JB, who testified that while riding in the car one day, KD spontaneously said, "I sucked my daddy's peepee until the milk came out, and my daddy said, oh, yeah, that's how you do it." Defense counsel did not object to the testimony, which constituted inadmissible hearsay. Although the prosecution argues that the testimony was admissible under MRE 803A, the statement was not made immediately after the incident and there is no indication that fear or another equally effective circumstance caused the delay. Thus, the testimony was inadmissible under MRE 803A.[2]

Defendant next argues that the trial court erred by admitting the hearsay testimony of Michigan State Police Detective Sergeant Gary Muir, which improperly vouched for KD's credibility. "It is generally improper

those of the categorical hearsay exceptions." *People v Katt*, 468 Mich 272, 290; 662 NW2d 12 (2003). This requirement was not met in this case because the allegations arose approximately one year after the alleged incidents and immediately after defendant and his fiancée were married and discovered that they were expecting a baby. Defendant's wife testified that KD's mother was jealous and often telephoned defendant. Unlike the interview in *Katt*, the interview in this case occurred because of the sexual abuse allegations, and KD was aware that she was going to be interviewed. See *id.* at 275-276. Further, during the interview, KD told Wheeler that she had to talk to her mother "for a minute" because she had to tell her mother what Wheeler had told her. Thus, the statements that KD made to Wheeler did not have circumstantial guarantees of trustworthiness equivalent to those of other hearsay exceptions, and the circumstances of this case are distinguishable from those in *Katt*.

[2] As previously recognized, the record fails to indicate any reason for KD's yearlong delay in disclosing the alleged abuse. Thus, on this record, KD's statement to JB was inadmissible under MRE 803A. We note, however, that if this case is retried and the prosecution is able to establish that fear or another equally effective circumstance caused the delay, KD's statement to JB may be properly admissible under MRE 803A. We emphasize that our determination regarding this issue is based on the record before us.

for a witness to comment or provide an opinion on the credibility of another witness, because credibility matters are to be determined by the jury." *People v Dobek,* 274 Mich App 58, 71; 732 NW2d 546 (2007).

At trial, Muir testified about a recorded telephone conversation that JB had with defendant at Muir's request. When asked about the context of the conversation, Muir testified:

> *A.* She [JB] was asking—she was telling him basically what [KD] had talked about, and based on that information, he was talking to her back about it, too.
>
> *Q.* Okay, well, let's cut right to it. Did she tell or do you recall did she tell the defendant the allegations that [KD] had made?
>
> *A.* Yes, she did.
>
> *Q.* Okay, what specifically do you recall her telling the defendant?
>
> *A.* That [KD] had said that she had sucked on her dad's peepee and stuff came out basically.
>
> *Q.* Okay, and you recall her actually telling the defendant that on the telephone.
>
> *A.* Yes.
>
> *Q.* All right, and what was his response if you can recall?
>
> *A.* He didn't know, y'know, why she was saying that basically.
>
> *Q.* Okay. Did she make any other inquiries of the defendant on the telephone?
>
> *A.* Yeah. Without reviewing the tape, I recall there was other conversation, and she was just basically trying to get to the bottom of, y'know, I know my daughter don't lie; why is she making these allegations then; was there anything that happened that, y'know, she might have seen or observed that would cause her to say this happened?

* * *

*Q.* Was there ever any discussion about an incident that may have occurred where it was acknowledged that [KD] touched the defendant?

*A.* There were actually—actually two incidents. One was touching, and one was when he was actually—another time, and I don't know what the time sequence was. There was one where he had made a comment about [KD] touching him and he's find—waking up or something to that effect, and he said that he told her [JB] about that, and she [JB] didn't recall that.

Muir's testimony, which was admitted without any objection by defense counsel, constituted inadmissible hearsay and tended to bolster KD's credibility. As such, it was not properly admissible.

Defendant also argues that the testimony of Child Protective Services worker Diana Fallone was inadmissible because it improperly vouched for KD's credibility. Again, defense counsel did not object to the testimony. Fallone testified that she filed a petition in a child protective proceeding based on KD's allegations. She further testified as follows:

*Q.* If you thought the child was lying, and I don't mean this particular case, but any case—

*A.* Right.

*Q.* —you thought the child was lying, would you still seek a petition?

*A.* No.

\* \* \*

*Q.* In this case before us now regarding [KD]—

*A.* Um-hum.

*Q.* Is that a yes?

*A.* Yes.

*Q.* Okay.

*A.* Sorry.

*Q.* Did—did you—was this investigation that you've described to us, was it completed?

*A.* Yes.

*Q.* Okay, and you're indicating that you sought the court's assistance, you filed a petition in a child protection proceeding in Oakland County, correct?

*A.* Correct.

*Q.* All right. Does that—can that lead us to the conclusion that you found that the allegations had been substantiated?

*A.* Yes.

In addition, Fallone testified that "there was no indication that she [KD] was coached or being untruthful[.]" Fallone's testimony directly commented on KD's credibility and bolstered the allegations against defendant. Accordingly, the testimony was not properly admissible.[3] *Dobek*, 274 Mich App at 71.

Defendant next argues that he was denied the effective assistance of counsel because defense counsel failed to object to the erroneous admission of the testimony previously discussed. He also contends that his counsel rendered ineffective assistance by failing to impeach KD with her preliminary examination testimony. "Whether a person has been denied effective assistance of counsel is a mixed question of fact and constitutional law." *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). This Court reviews for clear error a trial

---

[3] We note that it was permissible for Fallone to testify in the abstract regarding characteristics consistent or inconsistent with coached allegations. Her testimony that she conducted an investigation before seeking a petition was likewise permissible. The error occurred when Fallone was permitted to render an opinion specifically regarding KD's credibility. That testimony improperly vouched for KD's credibility and was inadmissible. *Dobek*, 274 Mich App at 71.

court's findings of fact and de novo its conclusions of law. *Id.* To establish a claim of ineffective assistance of counsel, a defendant must demonstrate that counsel's representation fell below an objective standard of reasonableness and that there exists a reasonable probability that, absent counsel's errors, the result of the proceeding would have been different. *People v Swain*, 288 Mich App 609, 643; 794 NW2d 92 (2010). A defendant must overcome the strong presumption that counsel's performance constituted sound trial strategy. *People v Toma*, 462 Mich 281, 302; 613 NW2d 694 (2000).

Defense counsel testified at a *Ginther*[4] hearing that his trial strategy was to convince the jury that KD was not believable, that JB had coached KD to make the allegations because JB disliked defendant, and that KD had told different versions of the story to different people. Defense counsel claimed that his failure to object to the testimony of witnesses other than Wheeler supported his trial strategy because their testimony showed that KD had told different stories to different people. We recognize that a particular trial strategy does not constitute ineffective assistance of counsel merely because it does not work. *People v Matuszak*, 263 Mich App 42, 61; 687 NW2d 342 (2004). We conclude, however, that counsel's failure to object to the hearsay testimony and the testimony that improperly bolstered KD's credibility fell below an objective standard of reasonableness because the witness testimony was, on the whole, consistent and did not demonstrate that KD had given different versions of events. Further, defense counsel's failure to object to the testimony that bolstered KD's credibility did not support his trial strategy of convincing the jury that KD was not believable.

---

[4] *People v Ginther*, 390 Mich 436, 443; 212 NW2d 922 (1973).

The first witness to testify at trial was KD herself, who testified that she "sucked [her] daddy's peepee." She claimed that she touched defendant's penis with her hands on one occasion and with her mouth on another occasion. She further testified that "milk" came out of defendant's "peepee," which tasted "like peepee and regular milk." KD denied telling JB that the "milk" tasted like cherry. Thereafter, JB testified without objection that KD had told her that she "sucked [her] daddy's peepee until the milk came out, and [her] daddy said, oh, yeah, that's how you do it." This testimony was hearsay, as previously discussed, and was consistent with and bolstered KD's testimony. Upon questioning by defense counsel, JB testified that KD had never told her that the "milk" tasted like cherry, but she recalled KD testifying to that effect "at the preliminary thing." Defense counsel did not impeach KD with her preliminary examination testimony that the "milk" tasted like cherry.

Defense counsel also permitted Muir to testify without objection that JB had telephoned defendant and asked him about KD's allegation that "she had sucked on her dad's peepee and stuff came out[.]" As previously discussed, Muir repeated JB and defendant's conversation, including JB's inquiry of defendant regarding why KD was making the allegation because KD does not lie. Muir also testified that defendant admitted that he awoke on one occasion to discover KD touching his penis. Defendant told JB that he had previously told her about that incident, but JB did not recall defendant mentioning it. As discussed, this testimony constituted hearsay and improperly bolstered KD's credibility.

In addition, defense counsel allowed Fallone to testify without objection that she found KD's allegations credible and that there was no indication that KD had been

coached. Also, as previously discussed, this testimony
was improper, and counsel's failure to object was not
consistent with his trial strategy of discrediting KD. At
the *Ginther* hearing, counsel testified, "[I]f somebody
was saying it's my opinion that she's being truthful, I
believe I would have objected to that." To the contrary,
counsel failed to object to Fallone's testimony that
bolstered KD's testimony.

Further, defense counsel failed to impeach KD with
her preliminary examination testimony, during which
she made several statements that supported counsel's
trial strategy. In particular, KD testified that her mouth
never touched defendant's penis, that her mother
"wanted [her] to tell you people [she] sucked it" and
that "milk" came out, and that her mother wanted her
to "tell a lie that [she] didn't know anything about[.]"
Although KD also made inconsistent statements at the
preliminary examination that tended to support her
allegations, there was no logical reason for counsel not
to impeach KD's trial testimony with her preliminary
examination testimony because it supported counsel's
theory that KD was not credible and that JB had
coached her to make the allegations. Such impeachment
would have supported counsel's strategy, discussed at
the *Ginther* hearing, to convince the jury that "the
young lady was testifying as to what she thought
happened, but . . . she really had no idea what had
happened."

After reviewing the record, we conclude that coun-
sel's ineffective assistance, in addition to the erroneous
admission of the Care House interview and Wheeler's
testimony regarding KD's statements, denied defen-
dant a fair trial. "The cumulative effect of several errors
can constitute sufficient prejudice to warrant reversal
even when any one of the errors alone would not merit

reversal . . . ." *Dobek*, 274 Mich App at 106. A new trial is warranted if the combination of errors denied the defendant a fair trial. *Id.* "[T]he cumulative effect of the errors must undermine the confidence in the reliability of the verdict before a new trial is granted." *Id.*

Defense counsel's failure to object to the hearsay testimony that repeated and bolstered KD's testimony in combination with Wheeler's erroneously admitted testimony and the improper admission of KD's Care House interview undermined the reliability of the verdict. Perhaps the most damning evidence was the video of KD's Care House interview, which depicted then four-year-old KD saying, "[M]y daddy makes me suck his peepee," "I just sucked it because I know how to suck peepee," and "milk" came out. The video further depicted Wheeler and KD's discussion as follows:

*Q.* And what did—what did it taste like?

*A.* Taste like peepee.

*Q.* Tastes like peepee. And where did the white stuff like milk go? Where did it go?

*A.* Like this. Like this. It goed like all the way up. And I—I like drinked it, and I said, pew, that's yuk.

*Q.* You said you drank it, and you said, pew, that's yuk?

*A.* [Nods head]

*Q.* Okay, and then where did it go?

*A.* Hm?

*Q.* Did it go—where did it go? Where did all the white stuff like milk go?

*A.* In my mouth.

*Q.* In your mouth, okay. And—and where did it go once it went in your mouth?

*A.* It—[points to her throat]

The cumulative effect of the errors denied defendant a fair trial and undermined confidence in the reliability of the verdict. *Id.*

The prosecution argues that a new trial is not warranted because when Officer Larry Rothman confronted defendant with the allegations, defendant merely responded that he "did not remember" engaging in oral intercourse with KD. On this point, however, Rothman's testimony was equivocal. Rothman testified that when he first asked defendant about the allegations, defendant responded, "[N]o, it didn't happen." Thereafter, Rothman questioned defendant further. With respect to the additional questioning, Rothman testified that defendant's statement that he did not remember was made in response to Rothman's direct question about whether defendant remembered an incident in which he ejaculated into KD's mouth. Defense counsel clarified Rothman's testimony as follows:

> *Q.* Well, the point I'm getting to, detective, is I don't want anybody to be under any misunderstanding that you looked at [defendant] and said, did you sexually assault your daughter, and him saying I can't remember doing that. The issue is you asked him do you remember and then him saying I don't remember.
>
> *A.* Right, that's correct.

On redirect, Rothman testified that defendant's response that he did not remember was in response to both direct questioning about whether the incident occurred and questioning regarding whether defendant remembered the conduct occurring. In light of the extensive errors that permeated defendant's trial, Rothman's testimony is not sufficient to surmount our conclusion that defendant was denied a fair trial and

that the errors undermined the reliability of the verdict. We therefore vacate defendant's convictions and sentences.

## II. PRETRIAL ERRORS

Defendant also argues that he was denied the effective assistance of counsel at the pretrial stage of the proceeding because counsel failed to inform him that he would be subject to a 25-year mandatory minimum sentence if he was convicted of first-degree CSC and because counsel erroneously advised him that he would not be able to live with his children if he was required to register as a sex offender pursuant to the Sex Offenders Registration Act (SORA), MCL 28.721 *et seq*. Again, we conclude that counsel's performance was constitutionally deficient. We further conclude that counsel's deficient representation prejudiced defendant.

A defendant's Sixth Amendment right to counsel extends to the plea-bargaining process. *Lafler v Cooper*, 566 US ___, ___; 132 S Ct 1376, 1384; 182 L Ed 2d 398 (2012). A claim of ineffective assistance of counsel may be based on counsel's failure to properly inform the defendant of the consequences of accepting or rejecting a plea offer. *Hill v Lockhart*, 474 US 52, 57-58; 106 S Ct 366; 88 L Ed 2d 203 (1985). As for ineffective-assistance-of-counsel claims generally, if a defendant's claim is based on counsel's failure to properly advise the defendant with respect to a plea offer, the defendant must show that his or her attorney's performance " 'fell below an objective standard of reasonableness' " and that " 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *Padilla v Kentucky*, 559 US ___; 130 S Ct 1473, 1481-1482; 176 L Ed 2d 284 (2010), quoting *Strickland v Washington*, 466

US 668, 688, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984).
"In the context of pleas a defendant must show the
outcome of the plea process would have been different
with competent advice." *Lafler*, 566 US at ___; 132 S Ct
at 1384. Counsel's assistance must be sufficient to
enable the defendant "to make an informed and volun-
tary choice between trial and a guilty plea." *People v
Corteway*, 212 Mich App 442, 446; 538 NW2d 60 (1995).

Defense counsel's failure to inform defendant in this
case that he would receive a 25-year mandatory mini-
mum sentence if convicted of first-degree CSC fell
below an objective standard of reasonableness. *Padilla*,
559 US at ___; 130 S Ct at 1482. MCL 750.520b(2)(b)
clearly provides for a mandatory 25-year minimum
sentence for a first-degree CSC violation that is "com-
mitted by an individual 17 years of age or older against
an individual less than 13 years of age . . . ." Thus,
counsel's advice to defendant that he could face up to a
20-year sentence, but would most likely be sentenced to
a minimum term between 5 and 8 years in accordance
with the sentencing guidelines, was erroneous. More-
over, the information regarding the mandatory mini-
mum sentence was essential to enable defendant to
make an informed decision about whether to accept the
prosecution's plea offer or proceed to trial. *Corteway*,
212 Mich App at 446.

In *Lafler*, the Court articulated the standard that a
defendant must establish in order to demonstrate
prejudice in cases in which counsel's ineffective advice
led the defendant to reject a plea offer and proceed to
trial. The Court stated:

> In these circumstances a defendant must show that but
> for the ineffective advice of counsel there is a reasonable
> probability that the plea offer would have been presented

to the court (*i.e.*, that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.[5]

Defense counsel's erroneous advice here prejudiced defendant. *On the morning of trial*, the prosecution offered defendant the option of pleading guilty of fourth-degree CSC. Defense counsel advised defendant that if he accepted the offer, the worst sentence that he could receive was 10 months in jail with the requirement that he register as a sex offender. Counsel testified at the *Ginther* hearing that if he had known that first-degree CSC carried a mandatory 25-year minimum sentence, he "would have absolutely pressed [defendant] and insisted that he take the deal." Moreover, defendant testified that, had his attorney advised him of the 25-year mandatory minimum sentence, he would have taken the plea offer because "[a] 25-year minimum is a lot different than the possibility of not going to prison." Defendant maintained that he would have accepted the plea offer even if doing so meant that he would have been permitted very little or no contact with his children. According to defendant, counsel erroneously advised him that he would not be permitted to reside with his children for as long as he was required to register as a sex offender. Defendant testified that he

---

[5] *Lafler*, 566 US at ___; 132 S Ct at 1385. Similarly, the Court stated:

> If a plea bargain has been offered, a defendant has the right to effective assistance of counsel in considering whether to accept it. If that right is denied, prejudice can be shown if loss of the plea opportunity led to a trial resulting in a conviction on more serious charges or the imposition of a more severe sentence. [*Id.* at ___; 132 S Ct at 1387.]

did not learn until after trial that SORA would not have prohibited him from residing with his children and that counsel's misinformation regarding SORA contributed to his decision to reject the plea offer.[6] Although the trial court determined that no error had occurred because defendant was aware of the possibility that he could be sentenced to a 20-year term, there is a significant difference between the possibility of a 20-year term with the likelihood of serving a much shorter sentence and the certainty of serving a 25-year minimum term. Defendant has thus shown that the offer was valid, that he would have accepted the offer, and that his convictions and sentences would have been much less severe than those that were imposed after trial. Therefore, defendant has established that counsel's failure to inform him of the actual consequences of accepting or rejecting the plea offer prejudiced him. *Lafler*, 566 US at ___; 132 S Ct at 1384.

Having concluded that defendant satisfied both prongs of the *Strickland* test, we must now determine the appropriate remedy. In doing so, we note that the circumstances of this case are very similar to those in *Lafler*, in which the respondent had rejected two plea offers on the basis of defense counsel's erroneous advice and was convicted following trial. *Id*. at___; 132 S Ct at 1383. The parties agreed that counsel's performance was constitutionally deficient and that the respondent had established the requisite prejudice. *Id*. at ___; 132 S Ct at 1384, 1386,

---

[6] In *People v Fonville*, 291 Mich App 363, 394-395; 804 NW2d 878 (2011), this Court held that defense counsel's representation was constitutionally defective because counsel had failed to advise the defendant that pleading guilty would require him to register as a sex offender pursuant to SORA. Although defense counsel advised defendant in this case that he would be required to register as a sex offender, counsel erroneously informed defendant that his registration would preclude him from living with his children for the duration of his registry, or 20 years.

1391. The Court noted that "Sixth Amendment remedies should be 'tailored to the injury suffered from the constitutional violation' " and "must 'neutralize the taint' of a constitutional violation. . . ." *Id.* at ___; 132 S Ct at 1388, quoting *United States v Morrison*, 449 US 361, 364-365; 101 S Ct 665; 66 L Ed 2d 564 (1981). The Court concluded:

> The correct remedy in these circumstances . . . is to order the State to reoffer the plea agreement. Presuming respondent accepts the offer, the state trial court can then exercise its discretion in determining whether to vacate the convictions and resentence respondent pursuant to the plea agreement, to vacate only some of the convictions and resentence respondent accordingly, or to leave the convictions and sentence from trial undisturbed. See Mich. Ct. Rule 6.302(C)(3) (2011) ("If there is a plea agreement and its terms provide for the defendant's plea to be made in exchange for a specific sentence disposition or a prosecutorial sentence recommendation, the court may . . . reject the agreement"). Today's decision leaves open to the trial court how best to exercise that discretion in all the circumstances of the case. [*Lafler*, 566 US at ___; 132 S Ct at 1391.]

The instant case differs from *Lafler* in one material respect. In this case, defendant was denied the effective assistance of counsel at both the plea bargain and trial stages of the proceeding.[7] Accordingly, taking this circumstance into consideration, we vacate defendant's convictions and sentences and remand to the trial court for the prosecution to reinstate its plea offer made immediately before trial. If defendant refuses to accept the plea offer, he is entitled to a new trial.[8]

---

[7] The respondent in *Lafler* was convicted following a fair trial, free of constitutional error. See *Lafler*, 566 US at ___; 132 S Ct 1385-1388.

[8] We note that it does not appear from the record that the prosecution offered defendant a plea agreement, as was the case in *Lafler*. See *Lafler*, 566 US at ___; 32 S Ct at 1383, 1387, 1391.

Defendant's convictions and sentences are hereby vacated, and this case is remanded to the trial court for further proceedings consistent with this opinion. We do not retain jurisdiction.

Donofrio, P.J., and Stephens, J., concurred.

Ronayne Krause, J. (*concurring*). I agree and concur with the majority in all respects other than the majority's conclusion that KD's statement to her mother was not admissible pursuant to MRE 803A. Under the circumstances of this case, I would not reverse the admission of KD's report of the abuse to her mother under MRE 803A(3). Because, for the other reasons discussed by the majority, this matter must be remanded for a new trial irrespective of the admissibility of that statement, I concur in the result. However, I write separately to address the concerns I have regarding what constitutes an excusable delay in reporting under MRE 803A(3).

The so-called "tender-years exception" to the hearsay evidence rule originated in *People v Gage*, 62 Mich 271; 28 NW 835 (1886). At that time, the exception specifically discussed delays in making a complaint being excusable only if caused by "silence [as] the direct consequence of fears of chastisement induced by threats of the perpetrator of the wrong." *Id*. at 274. The alternative of excusing delay caused by "other equally effective circumstance" was appended to that rule by our Supreme Court in *People v Baker*, 251 Mich 322, 326; 232 NW 381 (1930). Importantly, the Court in that case discussed a delay after the defendant, who was the father of the victim, simply told the victim not to tell anyone else. The Court held that the delay was excusable because

[a] child would ordinarily have no sense of outrage at such
acts by her own father, and complaining of them would not
occur to her. Her telling of the affair would more naturally
arise as the relation of an unusual occurrence and might be
delayed until something arose to suggest it. [*Id.*]

The Court opined that a mere admonition by the
victim's father to not tell anyone what happened was
"as effective to promote delay as threats by a stranger
would have been." *Id.*

I understand MRE 803A to be nothing but a codifi-
cation of the old common-law tender-years rule, which
our Supreme Court held in 1982 did not survive the
adoption of the then new Rules of Evidence. *People v
Kreiner*, 415 Mich 372, 377-378; 329 NW2d 716 (1982).
Although I cannot find any cases directly under MRE
803A that are helpful in explaining what an "other
equally effective circumstance" might be, I think that
*Baker* is not only relevant, but binding. Therefore, fear
or some analogue thereof is not the only basis for
excusing a delay under MRE 803A(3). Rather, MRE
803A(3) requires any circumstance that would be simi-
lar *in its effect* on a victim as fear in inducing a delay in
reporting, not a circumstance that is necessarily similar
*in nature* to fear. Indeed, the plain language of the rule
explains that it must be an "equally *effective* circum-
stance," not necessarily a *similar* one. Nothing in the
rule even requires that any "other equally effective
circumstance" must have been affirmatively created by
the defendant.

The abuse in question occurred in mid-May to June
2008. At that time, KD was living with defendant,
apparently because of some kind of involvement by
Child Protective Services. KD did not return to living
with her mother until the next January, approximately
eight months later. KD was, moreover, approximately

3½ years old at the time of the abuse. KD's mother and the Care House interviewer both explained that four-year-olds do not understand "concepts of time." Given that KD was living with defendant until January 2009, she may not have had a realistic opportunity to report the abuse for most of the year it took her to do so. The delay in disclosure would not likely have been subjectively apparent to her, and, as *Baker* suggests, KD would not necessarily have even understood at her age why the abuse was something she should report to anyone. Even if she had appreciated the nature of the acts, it is common and basic knowledge of how human beings operate that shame and confusion are powerful motivators of silence.

This is not to say that I do not find the record disappointing. It certainly would have been better had some kind of explicit record been made directly explaining why KD's disclosure did not occur until approximately a year after the abuse took place. Had defendant objected to the admission of this testimony at trial, a record like this one might not be sufficient to permit the admission of KD's disclosure to her mother to stand. However, had defendant objected, the prosecution would have had an opportunity to make that record. I do not decide that question, though. As the matter is before us, our review of this *unpreserved* evidentiary challenge is for plain error affecting defendant's substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). Consequently, reversal is not warranted merely because an error occurred, but "only when the defendant is actually innocent or the error seriously affected the fairness, integrity, or public reputation of judicial proceedings." *Id.* at 774.

Under the totality of the circumstances of this case, I would conclude that plain error affecting defendant's

substantial rights did not occur and, consequently, I would not reverse the admission of KD's disclosure of the abuse to her mother. However, because this matter must be remanded for a new trial in any event, I concur with the majority.