*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

RODGER ANTHONY NESTO, JR,

Defendant-Appellant.

UNPUBLISHED
August 15, 2019

No. 339986
Kalkaska Circuit Court
LC No. 16-003913-FC

Before: GADOLA, P.J., and MARKEY and KRAUSE, JJ.

PER CURIAM.

Defendant appeals as of right his conviction of one count of first-degree child abuse, MCL 750.136b(2), and one count of second-degree child abuse MCL 750.136b(3). Defendant was sentenced as a fourth habitual offender, MCL 769.12, to 30 to 60 years' imprisonment for first-degree child abuse, and 172 months to 60 years for second-degree child abuse. We affirm.

## I. FACTS

Defendant's convictions arose out of injuries sustained by EN, his approximately 2-month-old child. On April 23, 2016, EN was in the sole care of defendant when he called EN's mother and advised her that the child was injured. EN's grandmother arrived at the home to find that EN had suffered injuries to her head serious enough to cause bruising. Over defendant's objection, she called 9-1-1 in order to obtain medical assistance for EN. EN was transported to the hospital.

Defendant informed the responding officer that while he was sitting on the couch, he had accidentally dropped EN from 10 to 12 inches off the floor after EN's pacifier had fallen out of her mouth. However, defendant later reported that he had dropped EN while he was standing with her in the kitchen. During a subsequent interview, defendant stated that he had dropped EN and that he "did not hit [his] daughter in any way shape or form." He later acknowledged striking EN "a couple times" and further admitted that a week or two prior, EN had fallen when he was holding her, "and he wasn't sure if that had caused [the skull fracture]." Defendant also admitted that he had "slapped" EN on the chest when she was "throwing her fit," and pat her on the back "probably too hard" while trying to quiet her down.

-1-

At defendant's preliminary hearing, Dr. Brian Lishawa, the pediatrician who observed EN at Munson Hospital, described a pattern of bruising on EN's face and torso, which he believed to be consistent with child abuse. He testified that EN's injuries were not likely caused by an accidental dropping, but rather "would have been caused by a forceful strike to the right side of the child's face with the child's head against a hard surface on the back left." He did not believe that EN's bruising was consistent with defendant's explanation that the child had been recently dropped.

At trial, Dr. Lishawa testified that EN had suffered a "small linier [sic] non-depressed fracture" on her skull that had occurred within hours of her arrival at the hospital. EN had also suffered posterior rib fractures which were "at least a week old," and in Dr. Lishawa's opinion were indicative of child abuse. Given the presence of both bruising and the fracture, Dr. Lishawa concluded that the cause of EN's injuries must have included "an intense amount of force." Ultimately, Dr. Lishawa concluded that EN "had suffered different episodes of physical abuse during her first two months of life," the most recent of which "[v]ery possibly occurred within the four and a half hours prior to my examination."

Defendant presented no expert testimony. Instead, trial counsel argued that EN's injuries were likely caused by her mother, as her primary caretaker, instead of defendant. The trial court concluded that defendant was guilty of first-degree and second-degree child abuse. The court ultimately found that the "changes in [defendant's] stories and the details are a result of the defendant trying to cover up what actually occurred in this case and trying to explain the extent of her injuries." The court rejected trial counsel's argument that the injuries were caused by someone else and ultimately sentenced defendant to a prison term of 30 to 60 years for first-degree child abuse and 172 months to 60 years for second-degree child abuse.

Defendant filed a claim of appeal with this Court. Defendant also filed a motion to remand for an evidentiary hearing regarding his claims of ineffective assistance of counsel, and a panel of this Court granted defendant's motion. *People v Rodger Anthony Nesto Jr.*, unpublished order of the Court of Appeals, entered March 28, 2018 (Docket No. 339986).

On remand, defendant filed a motion requesting a new trial, an extension of the prior plea offer, and/or an evidentiary hearing. Defendant further requested funding to allow an expert witness to review the evidence and testify at the evidentiary hearing regarding whether trial counsel was ineffective for failing to consult with an expert during the case. The trial court denied defendant's request for funding but held an evidentiary hearing. At the completion of the hearing, the trial court denied defendant's request for a new trial or reinstatement of the prior plea after concluding that trial counsel was not ineffective in his representation of defendant.

## II. ANALYSIS

### A. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant contends that he was denied his right to the effective assistance of counsel due to his trial counsel's insistence that he reject a favorable plea offer and due to trial counsel's failure to seek a favorable expert to rebut the prosecution's expert. We disagree.

A defendant has the right to the effective assistance of counsel. US Const, Ams VI and XIV; Const 1963, art 1 § 20; *People v Vaughn*, 491 Mich 642, 669; 821 NW2d 288 (2012). Generally, to establish ineffective assistance of counsel, a defendant must show (1) that counsel's performance was below an objective standard of reasonableness under prevailing professional norms; (2) that there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different; and (3) that the resultant proceedings were fundamentally unfair or unreliable. *People v Lockett*, 295 Mich App 165, 187; 814 NW2d 295 (2012). "Effective assistance of counsel is presumed, and a defendant bears a heavy burden of proving otherwise." *People v Mack*, 265 Mich App 122, 129; 695 NW2d 342 (2005). A defendant claiming ineffective assistance of counsel must demonstrate that counsel's performance was below an objective standard of reasonableness and there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *People v Scott*, 275 Mich App 521, 526; 739 NW2d 702 (2007). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland v Washington*, 466 US 668, 684; 104 S Ct 2052; 80 L Ed 2d 674 (1984).

Generally, the determination whether a defendant has been deprived the effective assistance of counsel presents a mixed question of fact and constitutional law. See *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012). When the trial court has held a *Ginther* hearing, the trial court must first find the facts and then decide whether those facts constitute a violation of the defendant's constitutional right to effective assistance of counsel. *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). Thereafter, this Court reviews the trial court's factual findings for clear error, while its constitutional determinations are reviewed de novo. *Trakhtenberg*, 493 Mich at 47. Regard should be given to the trial court's opportunity to assess the credibility of the witnesses who appeared before it. MCR 2.613(C). A finding is clearly erroneous when, although there is evidence to support it, this Court, on the whole record, is left with a definite and firm conviction that a mistake was made. *People v Lee,* 314 Mich App 266, 272; 886 NW2d 185 (2016).

### 1. PLEA AGREEMENT

Defendant argues that counsel's performance was not objectively reasonable because counsel coerced him not to accept a plea offer. Defendant also argues that but for trial counsel's deficient performance, the result of the proceeding would have been different because he would have accepted the favorable plea offer. Defendant's argument lacks merit.

"A claim of ineffective assistance of counsel may be based on counsel's failure to properly inform the defendant of the consequences of accepting or rejecting a plea offer." *People v Douglas*, 296 Mich App 186, 205; 817 NW2d 640 (2012), rev'd in part on other grounds 496 Mich 557 (2014). Counsel's assistance must be sufficient to enable the defendant "to make an informed and voluntary choice between trial and a guilty plea." *People v Corteway*, 212 Mich App 442, 446; 538 NW2d 60 (1995). A defendant claiming ineffective assistance of counsel must demonstrate that counsel's performance was below an objective standard of reasonableness and that the poor performance prejudiced the defendant. *Douglas*, 496 Mich at 592. To establish that he has been prejudiced, defendant must show that, but for the ineffective advice of counsel, there is a reasonable probability that he would have accepted the plea, that the plea offer would have been presented to the court, that the court would have accepted its terms,

and that the conviction or sentence, or both, would have been more favorable than what was ultimately imposed. *Id*.

If ineffective assistance of counsel is established, the remedy must be tailored to the injury suffered. *Douglas*, 296 Mich App at 209. In situations where a defendant was offered a guilty plea in exchange for a count less serious than the one for which he was convicted, "the proper exercise of discretion to remedy the constitutional injury may be to require the prosecution to reoffer the plea proposal. Once this has occurred, the judge can then exercise discretion in deciding whether to vacate the conviction from trial and accept the plea or leave the conviction undisturbed." *Lafler v Cooper*, 566 US 156, 171; 132 S Ct 1376; 182 L Ed 2d 398 (2012),

In this case, defendant was sentenced as a fourth habitual offender to 30 to 60 years for first-degree child abuse, and 172 months to 60 years for second-degree child abuse. According to defendant, he would have received a less severe prison sentence under a guilty plea as a second habitual offender to second-degree child abuse only. Defendant indicates that he rejected the offer only because trial counsel advised him that "the prosecution's case was non-existent and demanded [he] proceed to trial or find another attorney." Accordingly, defendant posits that trial counsel's erroneous assessment that defendant would not be found guilty prejudiced him.

Defendant's arguments are not persuasive. This Court presumes that a defense lawyer provided effective assistance, and it is a heavy burden to overcome the presumption. *Vaughn*, 491 Mich at 670. At the *Ginther* hearing, trial counsel testified that he did engage in plea negotiations with the prosecution, presented the offer to defendant, and discussed the guidelines. Trial counsel acknowledged that he did not specifically discuss the potential of losing, but stated that he did "compare and contrast" the guidelines of the plea offer against those of a conviction. According to counsel, defendant maintained his innocence, and he explained to defendant that he could not represent him in offering a guilty plea because he could not assist an innocent client in taking a plea. Trial counsel believed defendant's claims that he had not intentionally caused any harm to EN and counsel further indicated that he was not willing to elicit perjured testimony at a plea hearing. Although trial counsel believed that the prosecution did not have a strong case, he advised defendant that he could retain or ask for a court-appointed attorney to represent him in plea proceedings if defendant wished to offer a guilty plea. Defendant did not do so.

Throughout the case, and even after his conviction, defendant maintained his innocence and never acknowledged to trial counsel that he abused EN. Consequently, defendant has not overcome the presumption that his lawyer provided effective assistance when handling the plea offer, particularly because defendant never exercised the option of seeking alternate counsel and submitting a guilty plea.

Moreover, even if this Court found that trial counsel's performance was below an objective standard of reasonableness, defendant is unable to establish that he was prejudiced. More specifically, while defendant claimed at the *Ginther* hearing that he was prepared to take the plea offer, he also acknowledged that he had received a prior offer of "15 to 30 years" and declined it because he did not believe it was an appropriate offer "for an accident." Defendant

-4-

maintained his position that he did not abuse EN, and what occurred was "an accident." He further denied placing EN into a situation without due care or due regard for her life and safety. Indeed, throughout the hearing, he never admitted that he was reckless or careless with EN. Instead, he simply did not foreclose the possibility that he was reckless. Ultimately, the trial court concluded that defendant's testimony did not provide a factual basis to justify a plea to either first-degree or second-degree child abuse under even the "most generous view of what could be recklessness." Given these facts, defendant has not established a reasonable probability that he would have accepted the plea, that the plea offer would have been presented to the court, and that the court would have accepted its terms. *Douglas*, 496 Mich at 592.

## 2. EXPERT WITNESS

Defendant asserts that his trial counsel provided ineffective assistance by failing to adequately investigate and present an expert medical witness to refute the testimony of the prosecution's medical expert. We disagree.

Defense counsel has wide discretion as to matters of trial strategy. *People v Heft*, 299 Mich App 69, 83; 829 NW2d 266 (2012). "Decisions regarding whether to call or question witnesses are presumed to be matters of trial strategy." *People v Russell*, 297 Mich App 707, 716; 825 NW2d 623 (2012). "The failure to call witnesses only constitutes ineffective assistance of counsel if it deprives the defendant of a substantial defense." *People v Dixon*, 263 Mich App 393, 398; 688 NW2d 308 (2004). "A substantial defense is one that might have made a difference in the outcome of the trial." *People v Chapa*, 283 Mich App 360, 371; 770 NW2d 68 (2009) (citation and quotation marks omitted). A reviewing court will defer to counsel's strategic judgments, but strategic choices made after an incomplete investigation are reasonable only to the extent that reasonable professional judgments support the limitation on investigation. *Trakhtenberg*, 493 Mich at 51-55.

A failure to conduct a reasonable investigation can amount to ineffective assistance. *Id*. at 52-55. Defense counsel cannot, in some cases, make a legitimate choice about whether and to what extent he or she should rely on expert evidence without first obtaining familiarity with the medical issues and consulting with experts. See *People v Ackley*, 497 Mich 381, 389-394; 870 NW2d 858 (2015). Further, when there is no direct evidence, expert testimony becomes essential. *Id*. at 384. "Courts must determine whether the strategic choices [were] made after less than complete investigation, or if a reasonable decision [made] particular investigations unnecessary." *Id*. at 389 (quotation marks and citation omitted; alterations in original).

Defendant posits that the circumstances of his case are nearly identical to those at issue in *Ackley*. In *Ackley*, the prosecutor intended to rely on several experts who would testify that injuries suffered by a child were most likely the result of intentional physical abuse. The defendant's appointed counsel contacted a single expert for assistance who informed counsel that he would not be able to testify in support of defendant's case. *Id*. at 385. However, the expert "explained to counsel that there was a marked difference of opinion within the medical community about diagnosing injuries that result from falling short distances, on the one hand, and shaken baby syndrome (SBS) or, as it is sometimes termed, abusive head trauma (AHT), on the other hand." *Id*. Counsel apparently never sought out another expert, despite being given the name of another expert who could assist

him. *Id*. at 385-386. Nor did counsel read medical treatises or other articles on the topic. *Id*. at 386. Our Supreme Court concluded that the defendant's counsel provided ineffective assistance by completely failing to seek the assistance of an expert who could support the defendant's theory and counter the prosecution's expert, and by failing to develop a trial strategy based on familiarity with the readily available journal articles to educate himself on the medical issues at the core of the case. *Id*. at 389-394.

In this case, trial counsel was aware of the prosecution's theory of the case—that EN suffered from non-accidental injuries while in defendant's care—and was aware of Dr. Lishawa's position based on his testimony at the preliminary examination. Trial counsel was also aware of defendant's prior statements, including an admission that he dropped EN on her face. Nonetheless, trial counsel did not consult with any experts in the fields of SBS or AHT. However, this was not a case where the prosecution was arguing that EN's injuries were the result of SBS or AHT. Rather, in this case, Dr. Lishawa's testimony suggested that EN had experienced multiple incidents of blunt force trauma throughout her short lifespan. These facts distinguish defendant's case from *Ackley*.

Further, trial counsel indicated that he chose not to consult with experts because his theory of the case was focused on developing the argument that defendant did not intentionally injure EN, but her mother did. Trial counsel believed that his defense theory would exonerate defendant because EN was not in the exclusive care of defendant during the times when the injuries occurred, EN's mother was EN's primary caregiver and had repeatedly sought medical attention for EN, she had shown frustration over EN's colic, and may have caused the injuries in her hurry to leave home that morning to get her methadone "fix." Once trial counsel settled on this theory, there was no need for an expert witness to address whether the injuries were accidental in nature.

The prosecution argues that even if defendant had obtained an expert, a favorable outcome for defendant was not guaranteed. The prosecution also suggests that trial counsel's strategy of blaming the mother was reasonably calculated and did not necessitate a medical expert. Indeed, this Court has acknowledged that the fact a strategy did not succeed does not necessarily amount to ineffective assistance of counsel. *People v Petri*, 279 Mich App 407, 412; 760 NW2d 882 (2008).

On remand, defendant motioned the trial court for the approval of funds to retain an expert. The motion was supported by an affidavit outlining the potential testimony of Dr. John G. Galaznik, who while acknowledging that he had not yet conducted a thorough review of EN's medical records, disagreed with the accuracy of Dr. Lishawa's testimony as to whether EN's injuries could be caused by an accidental fall. However, because the trial court declined to provide funds for Dr. Galaznik's services as an expert witness, the record is devoid of any conclusions Dr. Galaznik may have reached had he been retained and fully reviewed the file.

Undoubtedly, had the trial court concluded that EN's injuries were accidental, defendant could not have been convicted of either first-degree or second-degree child abuse, which respectively require a showing that the injuries were caused either intentionally or recklessly. MCL 750.136b(2); MCL 750.136b(3). However, defendant has not established that this conclusion was reasonably probable, and thus, failed to establish that any error prejudiced him.

Given defendant's multiple admissions to law enforcement that he had struck EN on several occasions, including admissions that he slapped and struck her "too hard," and that this may have caused her fractured skull and fractured ribs, the trial court had substantial non-medical evidence to support defendant's conviction. Accordingly, defendant cannot establish that, but for counsel's errors, the result of the proceeding would have been different. *Scott,* 275 Mich App 526.

## B. OFFENSE VARIABLES

Defendant also contends that the trial court improperly assessed 25 points under OV 3 and 10 points under OV 10, and that given the incorrect OV assessments, resentencing is appropriate. We find no error in the trial court's assessment of OV 3 and OV 10.

### 1. OV 3

Defendant argues that the trial court erred in assessing 25 points under OV 3 because EN did not suffer life-threatening or permanently incapacitating injuries, and that OV 3 should instead have been scored at 10 points for bodily injury requiring medical treatment. We disagree.

Offense variable 3 addresses physical injury to the victim. MCL 777.33(1); *People v Laidler*, 491 Mich 339, 343; 817 NW2d 517 (2012). MCL 777.33(1)(c) directs trial courts to assess 25 points under OV 3 if, during the offense, a "life threatening or permanent incapacitating injury occurred to a victim." However, 10 points are assessed under OV 3 when bodily injury requiring medical treatment occurred to the victim. MCL 777.33(1)(d). For the purpose of OV 3, a "victim" is any person harmed by the criminal actions of the defendant. *Laidler*, 491 Mich at 349 n 6. The relevant inquiry is whether the victim's injury was life threatening, rather than whether a defendant's action was life threatening. *People v Rosa*, 322 Mich App 726, 746; 913 NW2d 392 (2018).

This Court has recognized the ordinary meaning of "life-threatening" as "capable of causing death: potentially fatal." *People v Chaney*, ___ Mich App ___, ___; ___ NW2d ___ (2019) (Docket No. 341723); slip op at 2. Therefore, the relevant inquiry is whether the injuries were potentially fatal. *Id.* at 3. However, in assessing whether an injury is "life threating," this Court's review must also take into account "the effect of medical treatment." *Id.* at ___ n 4; slip op at 3.

In this case, Dr. Lishawa testified at trial that upon initially examining the child, he "determined quite quickly that [EN] was not in life threatening danger from the injuries she'd received," and therefore concluded that she could be treated properly at that facility. This statement appears to have been the doctor's initial impression arrived at in the very beginning of his assessment of the child for purposes of determining whether the child could be given adequate care at that facility, and not a final conclusion of the extent of her injuries. Dr. Lishawa thereafter testified that his impressions regarding this case evolved after the initial assessment, for example, the child's skull fracture was not detected during the first examination. He further testified that the amount of bone damage the 2-month-old child had sustained required a large amount of force. The child was thereafter treated at the hospital for three days before being

released. Viewing the doctor's testimony in its entirety supports the conclusion that the statement that the child's injuries were not life-threatening was an initial assessment only. We further observe that, even if wrongly scored, a rescoring of OV 3 would not affect defendant's sentencing in light of our assessment of the scoring of OV 10.

## 2. OV 10

Defendant argues that OV 10 should have been assessed 0 points because defendant's crime did not involve the exploitation of a vulnerable victim. We disagree.

The statute defines "Vulnerability" as "the readily apparent susceptibility of a victim to injury, physical restraint, persuasion, or temptation." MCL 777.40(3)(c). " 'Exploit' means to manipulate a victim for selfish or unethical purposes." MCL 777.40(3)(b). More specifically, MCL 777.40(1)(b) directs the trial court to assess 10 points under OV 10 if it has found that defendant "exploited a victim's physical disability, mental disability, *youth* or agedness, or a domestic relationship, or the offender abused his or her authority status." MCL 777.40(1)(b) (emphasis added). In child-abuse cases, the victim's youthfulness should be considered for the purpose of assessing OV 10. See *People v McFarlane*, 325 Mich App 507, 536; 926 NW2d 339, 357 (2018).

Defendant argues that he did not manipulate EN for a selfish or unethical purpose and the trial court erred in declining to examine whether defendant was motivated by selfish or unethical purposes. However, Dr. Lishawa's testimony created an inference that defendant violently struck or threw EN when she was just two months of age. Subsequently, defendant selfishly refused to seek medical attention for EN for fear of being sent to jail. The trial court may rely on inferences that arise from the record evidence when making the findings underlying its scoring of offense variables. *People v Earl,* 297 Mich App 104, 109-110; 822 NW2d 271 (2012). That evidence supported a score of 10 points under OV 10. Accordingly, the trial court did not err in assessing defendant 10 points under OV 10.

## 3. RESENTENCING

The trial court calculated defendant's total OV score to be 35 and PRV score to be 67, which placed him in cell II/E of the sentencing grid, with a minimum sentence range of 108-360 months for his conviction of first-degree child abuse given his fourth habitual offender status. See MCL 777.62; see also 777.21(3)(c). Even if 15 points were subtracted from OV 3, the new score would remain in cell II/E, and the same minimum sentence range would apply. MCL 777.62. The trial court sentenced defendant to serve a minimum sentence of 360 months in prison, which was within the range provided under cell II/E. Because defendant's sentencing guidelines range does not change, resentencing is not required. See *People v Francisco*, 474 Mich 82, 89 n 8; 711 NW2d 44 (2006) ("Where a scoring error does not alter the appropriate guidelines range, resentencing is not required.").

Further, given that defendant's minimum sentence is within the appropriate guidelines range, this Court must affirm defendant's sentence and may not remand for resentencing. MCL 769.34(10).

Affirmed.


/s/ Michael F. Gadola
/s/ Jane E. Markey
/s/ Amy Ronayne Krause