*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
January 21, 2021

Plaintiff-Appellee,

v

No. 350064
Berrien Circuit Court
LC No. 2016-004590-FC

RONNY WAYNE SCOGGIN,

Defendant-Appellant.

Before: REDFORD, P.J., and MARKEY and BOONSTRA, JJ.

PER CURIAM.

Defendant, Ronny Wayne Scoggin, appeals as of right his jury convictions of six counts of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(2)(b). The trial court sentenced defendant to consecutive terms of 25 to 60 years' imprisonment for each count. We affirm defendant's convictions, but remand to the trial court to correct defendant's sentences for Counts 3, 4, 5, and 6.

## I. FACTUAL BACKGROUND

This case arose from defendant's sexual abuse of his seven-year-old step-granddaughter, AB. One day in October 2016, AB visited her grandmother and defendant at their residence. AB went into a motor home on the property and defendant followed her. AB's grandmother entered the motor home and saw defendant near the bedroom with his pants down and his penis exposed. As AB's grandmother walked toward defendant, she saw AB standing near a desk by the bed leaning and bending at her waist with one hand on a chair. AB had on her top, but her pants were at her ankles. AB's grandmother removed her from the motor home and took her to her parents' house. AB's mother and grandmother took AB to the hospital for an examination.

Sexual assault nurse examiner (SANE) Bonnie Christopher conducted a SANE examination on the day of the alleged sexual assault. During the examination, AB disclosed that defendant put his penis in her anus and asked AB to perform fellatio on him. AB also disclosed that defendant previously committed penile-vaginal penetration, penile-oral penetration, penile-anal penetration, digital-anal penetration, digital-vaginal penetration, oral-vaginal sexual contact, and oral-anal sexual contact. Regarding the physical examination, Christopher observed that AB

-1-

had irritation around her anal area and AB cried when Christopher examined that area. Christopher also observed a disruption of AB's hymenal tissue and tearing around AB's anal area. At trial, AB testified that defendant sexually abused her. The jury found defendant guilty of six counts of CSC-I. Defendant now appeals.

## II. ANALYSIS

## A. EXPERT WITNESS TESTIMONY IN A CHILD SEXUAL ABUSE CASE

## 1. STANDARD OF REVIEW

Defendant first argues that the trial court committed plain error by permitting expert witnesses Christopher and Children's Advocacy Center (CAC) forensic interviewer Barbara Welke to vouch for and bolster AB's credibility, and that defense counsel provided ineffective assistance by failing to object to Christopher's and Welke's testimonies. We disagree.

This issue is unpreserved because defendant did not object to the admission of Christopher's and Welke's testimonies on the basis of impermissible witness vouching. See MRE 103(a)(1); *People v Douglas*, 296 Mich App 186, 191; 817 NW2d 640 (2012). We review unpreserved challenges for plain error affecting defendant's substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). In *Carines*, our Supreme Court explained:

> To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights. The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings. It is the defendant rather than the Government who bears the burden of persuasion with respect to prejudice. Finally, once a defendant satisfies these three requirements, an appellate court must exercise its discretion in deciding whether to reverse. Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence. [*Id*. at 763-764 (quotation marks, alteration, and citations omitted).]

> Under MRE 702, expert witness testimony is permitted,

> > If the court determines that scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

"[I]t is improper for a witness or an expert to comment or provide an opinion on the credibility of another person while testifying at trial." *People v Musser*, 494 Mich 337, 349; 835 NW2d 319

(2013). Jurors, not expert witnesses, make credibility determinations. *Id*. at 348-349; *People v Dobek*, 274 Mich App 58, 71; 732 NW2d 546 (2007).

## 2. WHAT IS AND IS NOT PERMISSIBLE PHYSICIAN AND MEDICAL EXPERT TESTIMONY IN CHILD SEXUAL ASSAULT CASES

A physician or medical expert may not opine whether a complainant was sexually assaulted when the expert's opinion is based on the expert's assessment of the complainant's truthfulness or when the expert's opinion is based only on what the complainant told the medical expert. *People v Thorpe*, 504 Mich 230, 255; 934 NW2d 693 (2019). "Nonetheless, an examining physician, if qualified by experience and training relative to treatment of sexual assault complainants, can opine with respect to whether a complainant had been sexually assaulted when the opinion is based on physical findings and the complainant's medical history." *Id*. Although an expert may not testify that sexual abuse occurred and may not vouch for the veracity of a victim or whether the defendant is guilty,

> (1) an expert may testify in the prosecution's case in chief regarding typical and relevant symptoms of child sexual abuse for the sole purpose of explaining a victim's specific behavior that might be incorrectly construed by the jury as inconsistent with that of an actual abuse victim, and (2) an expert may testify with regard to the consistencies between the behavior of the particular victim and other victims of child sexual abuse to rebut an attack on the victim's credibility. [*People v Peterson*, 450 Mich 349, 352-353; 537 NW2d 857 (1995).]

In this case, after Christopher testified regarding her findings, defense counsel cross-examined Christopher whether in her opinion the findings were consistent with sexual abuse. Christopher responded, "I would say she had findings consistent with sexual—possible sexual abuse, but I can't confirm that. Because I didn't take—I didn't look at her prior to [the SANE examination]. I didn't know what she look like prior to that." Christopher then clarified, "Coming from the history that she gave me, the history that mom gave me, with her medical con—history, what [AB] had told me and what I saw was consistent," and stated that AB's reaction to the examination was consistent with sexual abuse.

Christopher based her opinion that the findings were consistent with sexual abuse on AB's statements to Christopher, AB's reaction and discomfort during the examination, and AB's medical history. The record reflects that physical findings also supported a finding of sexual assault. AB presented with irritation and tearing around her anus and a disruption of her hymenal tissue. Although Dr. Sarah Brown and Christopher discussed that AB's physical examination results were normal, Christopher testified that her opinion was in part based on "what [she] saw" during the examination, which included the irritation of AB's anus. Christopher did not state that she believed AB or that AB was trustworthy, nor did she testify that a sexual assault occurred. Further, Christopher did not testify or offer an opinion regarding defendant's guilt. Christopher opined that there were findings consistent with possible sexual abuse, but she did not base her testimony solely on her assessment of AB's statements. The record reflects that physical findings existed from which the jury could find that sexual abuse occurred. Cf. *Thorpe*, 504 Mich at 261-262; *People v Del Cid (On Remand)*, ___ Mich App ___, ___; ___ NW2d ___ (2020) (Docket No. 342402); slip op at 9.

The prosecution offered CAC interviewer Welke's direct examination testimony to explain why a child's statements and sexual abuse disclosures may appear inconsistent and to explain delayed disclosures. Welke did not explain AB's behavior or testify whether AB's behavior and statements were consistent with a victim of sexual abuse. Welke only referred to AB's behavior to explain that Welke did not observe evidence of suggestibility or coaching during her interview with AB. The record reflects that Welke provided testimony regarding AB on redirect examination in response to defense counsel's cross-examination regarding suggestibility and coaching, as well as in response to a juror's questions if AB was coached and was truthful during the CAC interview. Defense counsel stated in opening that AB's inconsistent statements made her testimony not credible and defended by challenging her credibility. Welke testified regarding AB's statements and behavior to explain that AB's behavior could be incorrectly construed by the jury as inconsistent with that of an actual abuse victim. She properly testified in response to defendant's attack on AB's credibility by clarifying that AB's behavior appeared consistent with other victims of sexual abuse. See *Peterson*, 450 Mich at 352-353.[1]

Defendant has failed to demonstrate that Christopher's or Welke's testimonies were inadmissible or vouched for AB's credibility. The admission of their testimonies by the trial court did not constitute plain error. See *Thorpe*, 504 Mich at 255; *Carines*, 460 Mich at 763; *Peterson*, 450 Mich at 352-353.

## 3. ALLEGATIONS OF INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL RELATIVE TO NOT OBJECTING TO EXPERT TESTIMONY

Regarding defendant's ineffective assistance of counsel claim, defendant failed to preserve this issue because he did not move the trial court for a new trial or evidentiary hearing. See *People v Sabin (On Second Remand)*, 242 Mich App 656, 658; 620 NW2d 19 (2000). We review this issue for mistakes apparent on the lower court record. See *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012).

"Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Solmonson*, 261 Mich App 657, 663; 683 NW2d 761 (2004) (citation omitted). To overcome this presumption, a defendant must show that: (1) defense counsel's performance did not meet an objective standard of reasonableness under the circumstances and

---

[1] Further, the trial court instructed the jury that Christopher and Welke were qualified as experts and that experts were permitted to give opinions on matters within their expertise. However, the trial court instructed the jury that it could decide not to believe an expert's opinion and that it must decide whether the facts that the expert gave for his or her opinion were true. Additionally, the trial court instructed the jury that it could consider Welke's testimony about the behavior of sexually abused children "only for the limited purpose of deciding whether [AB]'s acts and words after the alleged crime were consistent with those of sexually abused children." The trial court also instructed the jury that it could not use this evidence to find that defendant committed the charged offenses and could not consider Welke's testimony an opinion that AB was telling the truth. Jurors are presumed to follow their instructions. See *People v Stevens*, 498 Mich 162, 177, 190; 869 NW2d 233 (2015). Additionally, the jury as the finder of fact makes credibility determinations. See *Dobek*, 274 Mich App at 71.

according to prevailing professional norms, and (2) there was a reasonable probability that, but for defense counsel's errors, the results of the proceeding would be different. *Strickland v Washington*, 466 US 668, 687-688; 104 S Ct 2052; 80 L Ed 2d 674 (1984); *People v Pickens*, 446 Mich 298, 312-313; 521 NW2d 797 (1994). A defendant must show that the result that occurred was fundamentally unfair or unreliable. *People v Lockett*, 295 Mich App 165, 187; 814 NW2d 295 (2012).

"Defense counsel must be afforded broad discretion in the handling of cases." *Pickens*, 446 Mich at 325. Trial counsel is not ineffective for failing to raise an objection or a motion that lacks merit. *People v Fonville*, 291 Mich App 363, 384; 804 NW2d 878 (2011). "Declining to raise objections can often be consistent with sound trial strategy." *People v Unger*, 278 Mich App 210, 242, 253; 749 NW2d 272 (2008).

In this case, the record does not support defendant's claim that defense counsel provided ineffective assistance. Both Christopher's and Welke's testimony did not constitute impermissible vouching for AB's credibility. Because Christopher's and Welke's testimonies were admissible, defense counsel's performance did not fall below an objective standard of reasonableness by failing to raise a futile objection. See *Fonville*, 291 Mich App at 384.

Further, even if defense counsel performed deficiently, defendant has failed to demonstrate that a reasonable probability existed that, but for defense counsel's failure to object to the experts' testimonies, the results of the proceeding would be different. AB testified that defendant penetrated her anus in October 2016, and that defendant previously committed penile-vaginal penetration, penile-oral penetration, penile-anal penetration, digital-anal penetration, digital-vaginal penetration, oral-vaginal sexual contact, and oral-anal sexual contact. Reasonable jurors could find beyond a reasonable doubt based upon AB's testimony that defendant committed six counts of CSC-I. See MCL 750.520b. Absent Christopher's and Welke's testimonies, ample evidence supported the jury's verdict. See *People v Dunigan*, 299 Mich App 579, 582; 831 NW2d 243 (2013) (explaining that it is the jury's role to determine the weight and credibility of a witness's testimony). Defendant has failed to establish that the outcome of the trial was fundamentally unfair or unreliable, see *Lockett*, 295 Mich App at 187, or that a different result likely would have occurred. See *Strickland*, 466 US at 687-688; *Pickens*, 446 Mich at 312-313; *Solmonson*, 261 Mich App at 663.

## B. ADMISSIBILITY OF CHILD SEXUAL ABUSE VICTIMS' STATEMENTS TO MEDICAL PROVIDERS UNDER MRE 803(4)

Defendant next argues that the trial court abused its discretion by allowing Christopher to testify regarding AB's statements that she made during the SANE examination. We disagree.

We review for an abuse of discretion the trial court's decision whether to admit evidence. *People v Gursky*, 486 Mich 596, 606; 786 NW2d 579 (2010). "The trial court abuses its discretion when its decision falls outside the range of principled outcomes or when it erroneously interprets or applies the law." *People v Lane*, 308 Mich App 38, 51; 862 NW2d 446 (2014) (citation omitted). The decision to admit evidence that is inadmissible as a matter of law constitutes an abuse of discretion. *Gursky*, 486 Mich at 606.

Hearsay is "a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MRE 801(c). Hearsay, generally, is not admissible. MRE 802. MRE 803(4) pertains to a hearsay exception for statements that a declarant makes for the purpose of medical treatment or diagnosis. MRE 803(4) provides:

> The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
>
> * * *
>
> (4) Statements made for purposes of medical treatment or medical diagnosis in connection with treatment. Statements made for purposes of medical treatment or medical diagnosis in connection with treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably necessary to such diagnosis and treatment.

The Michigan Supreme Court concluded that the rationale for the hearsay exception under MRE 803(4) involves "(1) the self-interested motivation to speak the truth to treating physicians in order to receive proper medical care, and (2) the reasonable necessity of the statement to the diagnosis and treatment of the patient." *People v Meeboer (After Remand)*, 439 Mich 310, 322; 484 NW2d 621 (1992).

> Factors related to trustworthiness guarantees surrounding the actual making of the statement include: (1) the age and maturity of the declarant, (2) the manner in which the statements are elicited (leading questions may undermine the trustworthiness of a statement), (3) the manner in which the statements are phrased (childlike terminology may be evidence of genuineness), (4) use of terminology unexpected of a child of similar age, (5) who initiated the examination (prosecutorial initiation may indicate that the examination was not intended for purposes of medical diagnosis and treatment), (6) the timing of the examination in relation to the assault (the child is still suffering pain and distress), (7) the timing of the examination in relation to the trial (involving the purpose of the examination), (8) the type of examination (statements made in the course of treatment for psychological disorders may not be as reliable), (9) the relation of the declarant to the person identified (evidence that the child did not mistake the identity), and (10) the existence of or lack of motive to fabricate. [*Id*. at 324-325 (citations omitted).]

Further, corroborating evidence, such as physical evidence of assault or resulting diagnosis and treatment, can strengthen the reliability of the evidence and support whether the statement was made for the purpose of receiving medical treatment and care. *Id*. at 325-326. In *Meeboer*, our Supreme Court clarified that in cases of suspected or alleged child abuse, a trial court should consider the totality of the circumstances to determine the trustworthiness of a child's statement and whether the child understood the importance of telling the treating physician the truth. *Id*.

Regarding the reasonable necessity of the statements, information regarding the declarant's physical and psychological injuries can be reasonably necessary for medical diagnosis and treatment of the declarant's trauma. *Id*. at 328-329. Medical diagnosis and treatment of a victim involves treatment of her medical, physical, developmental, and psychological well-being. *Id*. at 329. Questions and discussion regarding the identity of the perpetrator may be reasonably necessary as it relates to the diagnosis and treatment of diseases, pregnancy, and the psychological impact of the abuse. *Id*. at 328-329. Disclosing the identity of the perpetrator itself can be a portion of the injury that a victim experiences from a sexual assault. *Id*. at 329.

In this case, AB was seven years old at the time of the SANE examination. AB demonstrated maturity when she described to Christopher what occurred. The record indicates that Christopher did not use leading questions to elicit statements from AB. Christopher asked direct questions in response to AB's statements in order to clarify AB's answers, to understand the extent of the acts that had occurred, and to understand how AB may have been injured. AB used childlike terms, including that defendant "put his private in my private," and had difficulty saying the words for the body parts, as demonstrated by AB pointing to the applicable genital area and referring to her vagina as her "coo coo cachew." AB was able to clarify to which "private" she referred when Christopher asked AB direct questions. The record indicates that AB used age-appropriate terminology.

Although an investigating police officer recommended that AB participate in an examination, AB's grandmother and parents initiated and brought AB to the hospital for the SANE examination. The SANE examination occurred on the same day as the sexual assault, and AB described that she felt irritation and tenderness around her anus at the time of the examination. Further, during the examination AB hid under a blanket, cried, expressed embarrassment, and had difficulty discussing the incident. Such conduct showed that she continued to suffer emotional distress from the incident at the time of the examination. The purpose of the examination was not related to preparation for the trial because the examination occurred approximately three years before the jury trial. Christopher performed the SANE examination in a hospital and not for psychological treatment. AB did not mistake defendant's identity because she had a close connection with him as her step-grandfather. Finally, no evidence establishes that AB had a motive to fabricate sexual abuse allegations. See *People v Duenaz*, 306 Mich App 85, 96; 854 NW2d 531 (2014). Further, in relation to diagnosis and treatment, Christopher testified that she recommended and prescribed a numbing medicine for AB because of the tearing, tenderness, and irritation that Christopher observed around AB's anal area, which supports a finding that AB's statements were made for the purpose of receiving medical treatment. See *Meeboer*, 439 Mich at 325-326.

Regarding the reasonable necessity of the statement to the diagnosis and treatment of AB, AB's statements regarding defendant's acts in October 2016, were reasonably necessary so that Christopher could examine and treat the areas of AB's body that could be injured and required medical treatment. See *id*. at 335-336. Although Christopher talked with an emergency room physician and nurse about AB before she conducted the SANE examination, no evidence establishes that the physician or nurse diagnosed and treated AB before Christopher's examination. AB showed symptoms of irritation and tenderness around her anus and expressed emotional distress from the incident at the time of the examination, and indicated the need for medical attention. Additionally, AB's statements regarding the incidents of sexual abuse that occurred before October 2016, provided medical history reasonably necessary so that Christopher could

identify and treat any past injuries, understand AB's past trauma, and diagnose and treat AB's present physical condition and her psychological well-being. See *id*. at 328-329, 334-335. Christopher's questions and AB's responses were reasonably necessary for Christopher to examine and treat AB and were not for investigatory purposes. Christopher followed the procedures for conducting a SANE examination, and her report reflected AB's statements, Christopher's observations of AB's body, and Christopher's notes regarding the examination. Therefore, we conclude that AB's statements to Christopher were reasonably necessary for medical diagnosis and treatment and that the statements were admissible under MRE 803(4). See *Meeboer*, 439 Mich at 322.

## C. ADMISSIBILITY OF EVIDENCE OF OTHER ACTS OF CHILD SEXUAL ABUSE UNDER MCL 768.27a

Defendant argues that the trial court abused its discretion by admitting other-acts evidence. We disagree.

MCL 768.27a provides:

(1) Notwithstanding section 27, in a criminal case in which the defendant is accused of committing a listed offense against a minor, evidence that the defendant committed another listed offense against a minor is admissible and may be considered for its bearing on any matter to which it is relevant. If the prosecuting attorney intends to offer evidence under this section, the prosecuting attorney shall disclose the evidence to the defendant at least 15 days before the scheduled date of trial or at a later time as allowed by the court for good cause shown, including the statements of witnesses or a summary of the substance of any testimony that is expected to be offered.

(2) As used in this section:

(a) "Listed offense" means that term as defined in section 2 of the sex offenders registration act, 1994 PA 295, MCL 28.722.

(b) "Minor" means an individual less than 18 years of age.

Our Supreme Court explained in *People v Watkins*, 491 Mich 450, 470-471; 818 NW2d 296 (2012), that this statute provides an exception to MRE 404(b) permitting the admission of other-acts evidence in a case in which a defendant is charged with sexual misconduct against a minor to show a defendant's character and propensity to commit the charged offenses. The policy considerations for the admission of other-acts evidence under MCL 768.27a include that sexual offenders are more likely than other offenders to commit subsequent sexual assaults; evidence of sexual assault of a minor typically involves difficult credibility determinations; and previous acts of sexual abuse are probative of a defendant's behavior and capability to engage in sexual misconduct. *Id*. at 475-476.

A trial court may exclude other-acts evidence under MCL 768.27a if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation

of cumulative evidence." MRE 403; see also *Watkins*, 491 Mich at 487. "[W]hen applying MRE 403 to evidence admissible under MCL 768.27a, courts must weigh the propensity inference in favor of the evidence's probative value rather than its prejudicial effect. That is, other-acts evidence admissible under MCL 768.27a may not be excluded under MRE 403 as overly prejudicial merely because it allows a jury to draw a propensity inference." *Id*. The trial court should consider the following factors when determining whether to exclude the other-acts evidence:

> (1) the dissimilarity between the other acts and the charged crime, (2) the temporal proximity of the other acts to the charged crime, (3) the infrequency of the other acts, (4) the presence of intervening acts, (5) the lack of reliability of the evidence supporting the occurrence of the other acts, and (6) the lack of need for evidence beyond the complainant's and the defendant's testimony. [*Watkins*, 491 Mich at 487-488.]

The extent to which the other-acts evidence supports a victim's credibility and rebuts the defense's attack on the victim's credibility weighs in favor of the probative value of the evidence. *Id*. at 492.

TD, MH1, MH2, and CR, who previously alleged sexual abuse by defendant, were similarly situated to AB when defendant committed the acts of sexual abuse against them. Defendant lived in the same home and served as a father figure to TD, MH1, MH2, and CR when the sexual abuse occurred. Defendant was married to their mothers, and the witnesses were between 7 and 14 years old when the sexual abuse occurred. Similarly, AB considered defendant a grandfather figure, regularly visited her grandparents' house, and AB was between six and seven years old when the sexual abuse occurred. TD, MH1, MH2, and CR testified that defendant committed acts of sexual abuse against them similar to the act against AB, including penile-anal penetration, digital-vaginal penetration, touching vaginal and anal areas, and having TD touch his penis. In this case, AB testified that defendant committed penile-anal penetration, oral-vaginal penetration, digital-anal penetration, digital-vaginal penetration, and cunnilingus against AB, and that defendant had AB perform fellatio. The other-acts evidence and the charged conduct were similar regarding the victims' ages, defendant's role as a parental figure, and the acts that defendant committed.

Defendant's prior acts of sexual abuse against MH1, MH2, CR and TD occurred more than 35 years before defendant's acts of sexual abuse against AB. The other acts of sexual abuse were not temporally proximate to the charged offenses. Nevertheless, the lack of temporal proximity does not preclude the admission of the other-acts evidence, particularly when the acts of sexual abuse were similar. See *People v Solloway*, 316 Mich App 174, 195; 891 NW2d 255 (2016).

TD testified that the acts of sexual abuse started when she was nine years old and continued until she was a teenager. Defendant was married and lived with MH1, MH2, and CR's mother. MH1 testified that defendant committed the sexual abuse against her for a few years. The repetitive nature of the previous acts of sexual abuse did not weigh in favor of excluding the evidence. See *id*.

Regarding the presence of intervening acts, defendant and MH1, MH2, and CR's mother divorced, and defendant pleaded guilty to second-degree criminal sexual conduct on the basis of

his sexual abuse of MH1, MH2, and CR. The record does not reflect significant intervening acts between the time of defendant's sexual assaults of TD, MH1, MH2, and CR and his assaults of AB. The record, however, does not contain evidence that defendant sufficiently reformed his behavior between his prior assaults and his present assaults. It appears that defendant's abuse of TD occurred shortly after defendant's relationship with MH1, MH2, and CR's mother ended and after defendant's abuse of MH1, MH2, and CR ended. Although about 20 years elapsed between defendant's sexual abuse of TD and his abuse of AB, no intervening act occurred during that period of 20 years. Evidence of intervening acts do not weigh in favor of excluding the evidence. See *id*.

Further, no evidence established that TD's, MH1's, MH2's, and CR's testimonies lacked reliability. Defendant's guilty plea of second-degree criminal sexual conduct on the basis of MH1's, MH2's, and CR's sexual abuse allegations supported the reliability of their testimonies. No evidence established that MH1, MH2, or CR had bias or anger against defendant at the time of the trial in this case. Moreover, no evidence established that TD's, MH1's, MH2's, and CR's testimonies regarding the other-acts evidence were not sufficiently reliable to present to the jury. See *Solloway*, 316 Mich App at 195-196.

The record reflects that the trial court instructed that the jury must find that defendant committed the acts of sexual misconduct against MH1, MH2, CR, and TD before it could consider the other-acts evidence against defendant. The trial court also instructed the jury that it could consider the other-acts evidence in deciding if defendant committed the charged offenses if the jury found that defendant committed the other acts of sexual misconduct. The trial court instructed the jury that it could not convict defendant because the jury believed that he was guilty of other bad conduct. Jurors are presumed to follow their instructions. See *People v Stevens*, 498 Mich 162, 177, 190; 869 NW2d 233 (2015).[2] The jury instructions "served to limit the danger of unfair prejudice by restricting use of the evidence." *People v Pesquera*, 244 Mich App 305, 320; 625 NW2d 407 (2001).

Finally, regarding the necessity of the other-acts evidence, AB testified that defendant committed penile-anal penetration, and defendant did not testify. AB's grandmother did not witness the act of penetration, and there were no eyewitnesses to support AB's allegations. Although physical evidence existed of defendant's semen on a paper towel located near the bed in the motor home, no testimony that defendant used the paper towel during or after the incident with AB was presented, and AB's DNA was not found on the bedsheets that were collected from the motor home. There were no eyewitnesses or physical evidence to support AB's disclosures and testimony regarding defendant's acts of sexual abuse against her that occurred before October 2016. The other-acts evidence was necessary for the prosecution's case because this case relied on AB's credibility, there were no eyewitnesses to corroborate AB's testimony, and there was no direct physical evidence to support AB's testimony, other than irritation of AB's anal area. See *id*. at 196.

---

[2] Additionally, the jury as the finder of fact makes credibility determinations. See *Dobek*, 274 Mich App at 71.

The other-acts evidence admitted under MCL 768.27a was relevant and probative because it tended to show defendant's propensity to commit the charged offenses and weighed in support of AB's credibility. See *Watkins*, 491 Mich at 470-471, 492. The danger of unfair prejudice did not substantially outweigh the probative value of the other-acts evidence, and the *Watkins* factors weighed in favor of admission. Therefore, the trial court did not abuse its discretion by admitting the other-acts testimony under MCL 768.27a. See *id*. at 487-488.

### D. CONSECUTIVE VS. CONCURRENT SENTENCING

Defendant also argues that the trial court abused its discretion and plainly erred by imposing consecutive sentences, and that defense counsel provided ineffective assistance by failing to object to the imposition of consecutive sentences. We agree.

This issue is unpreserved because defendant did not object to the imposition of consecutive sentences or argue his convictions did not arise from the same transaction. See *People v Clark (On Remand)*, 315 Mich App 219, 223-224; 888 NW2d 309 (2016). Generally, the trial court's decision to impose consecutive sentences is reviewed for an abuse of discretion. *People v Norfleet*, 317 Mich App 649, 664; 897 NW2d 195 (2016). However, this Court reviews unpreserved challenges for plain error affecting substantial rights. *Carines*, 460 Mich at 763.

In Michigan, concurrent sentencing is the norm, and a trial court may not impose a consecutive sentence unless authorized by the Legislature. See *People v Ryan*, 295 Mich App 388, 401; 819 NW2d 55 (2012). When the Legislature has authorized consecutive sentencing, the trial court must articulate its rationale for its discretionary decision to impose consecutive sentencing such that the rationale facilitates appellate review. See *Norfleet*, 317 Mich App at 664-665. MCL 750.520b(3) permits a trial court to impose consecutive sentences for CSC-I convictions. *Ryan*, 295 Mich App at 401.

MCL 750.520b(3) provides: "The court may order a term of imprisonment imposed under this section to be served consecutively to any term of imprisonment imposed for any other criminal offense arising from the same transaction." Criminal conduct that arises from the "same transaction" to justify consecutive sentences involves charges that "grew out of a continuous time sequence," or "had a connective relationship that was more than incidental" with "no relevant disruption in time or in the flow of events between the two distinct offenses." *Ryan*, 295 Mich App at 403-404.

In this case, Counts 1 and 2 pertained to the acts that defendant committed in October 2016. Counts 3, 4, 5, and 6 related to acts against AB that occurred between September 2015 to October 2016. The evidence presented during the trial supported that AB was subject to two acts of penetration (penile-anal penetration and fellatio) on the same day sufficient to constitute two CSC-I convictions during the same transaction. The evidence that the acts of penetration in October 2016, supported consecutive sentences because they grew out of a continuous time sequence and there was no disruption in time or in the flow of events between these acts. *Id*.

The prosecution concedes that the trial court erred by sentencing defendant consecutively for Counts 3, 4, 5, and 6. The record reflects that AB testified that the other acts of sexual abuse that formed the factual basis for Counts 3, 4, 5, and 6 did not occur on the same day as the acts on

-11-

the day in October 2016. Therefore, the acts of penetration from September 2015 to October 2016 did not support consecutive sentences because they did not arise from the same transaction or arise from the same transaction as Counts 1 and 2. Because the trial court did not possess the statutory authority to impose consecutive sentences for Counts 3, 4, 5, and 6, the trial court plainly erred by imposing consecutive sentences for those convictions. This error requires remand for the trial court to resentence defendant. See *People v Bailey*, 310 Mich App 703, 726; 873 NW2d 855 (2015). Where a court imposes a sentence that is partially invalid, only the invalid part of the sentence may be set aside. MCL 769.24; *People v Thomas*, 447 Mich 390, 393; 523 NW2d 215 (1994). Because our ruling effectively renders defendant's ineffective assistance of counsel claim in this regard moot, we need not address it.

### III. CONCLUSION

For the reasons set forth above, all of defendant's convictions for six counts of CSC-I upon a minor are affirmed. The case is, however, remanded to the trial court for the sole purpose to modify defendant's judgment of sentence to correct defendant's sentences so his convictions of Counts 3, 4, 5, and 6 run concurrently with one another and with Counts 1 and 2.[3] We do not retain jurisdiction.

/s/ James Robert Redford
/s/ Jane E. Markey
/s/ Mark T. Boonstra

---

[3] Upon remand, the amended judgment of sentence should reflect the sentences as follows:

Count 1: not less than 25 nor more than 50 years; consecutive with Count 2 but concurrent with Counts 3, 4, 5 and 6.

Count 2: not less than 25 nor more than 50 years; consecutive with Count 1 but concurrent with Counts 3, 4, 5 and 6.

Count 3: not less than 25 nor more than 50 years; concurrent with all other counts.

Count 4: not less than 25 nor more than 50 years; concurrent with all other counts.

Count 5: not less than 25 nor more than 50 years; concurrent with all other counts.

Count 6: not less than 25 nor more than 50 years; concurrent with all other counts.