*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
June 12, 2026
10:34 AM

Plaintiff-Appellee,

v

No. 371580
Kent Circuit Court
LC No. 22-007988-FH

SHERROD AQUESE KEITH-YOUNG,

Defendant-Appellant.

Before: REDFORD, P.J., and WALLACE and LIEVENSE, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of two counts of third-degree criminal sexual conduct, MCL 750.520d(1)(b) (force or coercion used to accomplish sexual penetration). Defendant was sentenced as a second-offense habitual offender, MCL 769.10, to 168 to 270 months' imprisonment for each conviction. Defendant was also ordered to register as a sex offender. We affirm.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On August 3, 2022, GS, then 16 years old, was left by her aunt, ZS, to babysit overnight while she worked. ZS was involved in an intimate relationship with defendant, who was also staying with ZS at the time. Later that evening, defendant made repeated advances toward GS, including placing GS on his lap, or as the victim described "crotch", attempting to kiss GS, and repeatedly asking to perform oral sex on GS. Defendant told GS he would stop if GS lied down in the bedroom with him. After GS complied, defendant forcibly groped GS and performed oral and digital sex on her. GS told defendant "no" and tried to physically stop defendant throughout the entire assault, but to no avail. Eventually, GS contacted ZS, who then called the police. Police arrived at the home shortly thereafter and advised GS to visit the YWCA for a sexual assault nurse examination. Forensic Nurse Examiner Angela Castello performed a full-body examination of GS but did not observe any physical injury or other trauma. GS reported experiencing difficulty breathing, difficulty speaking, and anxiety during the assault, and Castello testified that GS had also suffered from memory loss, anxiety, and nausea. GS denied feeling any pain at the time of her examination. GS was prescribed Zofran for her nausea but no other medications.

Before trial, the trial court asked the prosecutor to place any plea offers on the record so defendant could hear them before rendering a final decision on whether to proceed to trial. The prosecutor replied that "[i]f [defendant] pleads to one count of criminal sexual conduct in the third degree, we would dismiss the remainder of the Information. We would also agree that he is capped, his sentence is capped at the middle of the guidelines." The prosecutor explained that defendant's guidelines would be 72 to 120 months in the event that he agreed to the plea agreement but noted that, "[i]f he goes to trial and loses, his guidelines are 78 to 162" months with the possibility of consecutive sentences for each conviction. When asked by the trial court whether defendant still wished to proceed to trial, defendant responded in the affirmative. The trial court then reiterated the same sentencing guidelines that the prosecutor had described. Defendant reaffirmed his understanding of these consequences, and the parties proceeded to trial. The jury convicted defendant on both counts, and defendant was sentenced as previously noted.

Before this appeal, defendant moved to vacate his convictions and sentences and reopen the plea agreement in the trial court, claiming ineffective assistance of counsel. Defendant further argued, in the alternative, that a *Ginther*[1] hearing should be held if the trial court declined to vacate his convictions. The prosecution opposed the motion, and the trial court denied the requested relief. The trial court ultimately concluded that defendant did not successfully establish ineffective assistance of counsel because counsel's performance did not fall below an objective standard of reasonableness nor, in the event of such defective performance, was there any prejudice in the outcome of the proceedings. This appeal followed. Defendant filed a motion to remand for a *Ginther* hearing contemporaneously with this appeal. This Court denied the motion.[2]

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant contends on appeal that he received ineffective assistance of counsel when defendant's trial counsel failed to "correct" the prosecution and trial court's estimate of his sentencing guidelines, even though the calculations of those guidelines differed after trial. We disagree.

## A. STANDARD OF REVIEW

"Whether a defendant received ineffective assistance of trial counsel presents a mixed question of fact and constitutional law." *People v Armstrong*, 490 Mich 281, 289; 806 NW2d 676 (2011). "We review for clear error the trial court's factual findings, and '[w]e review de novo questions of constitutional law.' " *People v Yeager*, 511 Mich 478, 487; 999 NW2d 490 (2023), quoting *Armstrong*, 490 Mich at 289 (alteration in original). "Clear error exists when the reviewing court is left with the definite and firm conviction that a mistake has been made." *People v Davis*, 509 Mich 52, 68; 983 NW2d 325 (2022) (quotation marks and citation omitted).

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

[2] *People v Keith-Young*, unpublished order of the Court of Appeals, entered September 4, 2025 (Docket No. 371580).

However, because no *Ginther* hearing was held, we review solely for errors apparent on the record. *People v Abcumby-Blair*, 335 Mich App 210, 227; 966 NW2d 437 (2020).

## B. DISCUSSION

The right of criminal defendants to the effective assistance of counsel is enshrined in both the Michigan and federal Constitutions. US Const, Am VI; Const 1963, art 1, § 20. In *People v Douglas*, 496 Mich 557, 591-592; 852 NW2d 587 (2014), the Supreme Court of Michigan recognized the right to effective assistance of counsel extends to the context of plea bargaining. This Court has noted that "[a] claim of ineffective assistance of counsel may be based on counsel's failure to properly inform the defendant of the consequences of accepting or rejecting a plea offer." *People v Douglas*, 296 Mich App 186, 205; 817 NW2d 640 (2012), aff'd in part, rev'd in part on other grounds, 496 Mich 557 (2014). "To constitute ineffective assistance, trial counsel's performance must have fallen below an objective standard of reasonableness, and there must be a reasonable probability that counsel's subpar performance affected the outcome of the proceedings, rendering the proceedings unfair or unreliable." *People v Blevins*, 314 Mich App 339, 351; 886 NW2d 456 (2016).

However, when reviewing for ineffective assistance, defense counsel is entitled to a strong presumption of effective assistance. *People v LeBlanc*, 465 Mich 575, 578; 640 NW2d 246 (2002). The burden is accordingly upon the party who raises a claim of ineffective assistance of counsel to overcome that presumption. *Id*. In fact, "[d]efense counsel's advice does not need to be correct, but it must fall within the range of competence demanded of attorneys in criminal cases." *People v Fonville*, 291 Mich App 363, 384-385; 804 NW2d 878 (2011) (quotation marks and citation omitted). Stated more specifically, when reviewing for ineffective assistance of counsel, this Court is primarily concerned with a defendant's understanding of the "direct consequences of a plea." *Id.* (quotation marks and citation omitted). In *Fonville*, this Court likened the failure to apprise a defendant of "direct consequences" of their plea to situations in which counsel has failed to explain severe consequences of a plea, such as consequences resulting from being sentenced as a habitual offender to which "specific and separate guidelines applicable to sentencing" apply. *Id*. at 385-386 (quotation marks and citation omitted).

We believe that trial counsel provided effective assistance to defendant. As the party who raised the issue of the efficacy of his counsel's assistance, defendant must show that counsel's performance fell "below an objective standard of reasonableness." *Blevins*, 314 Mich App at 351. Here, the record does not reflect any discussions between defendant and his counsel when his counsel asserted the accuracy of the proposed sentencing guidelines of 78 to 162 months. Instead, defendant's claim is based solely upon defense counsel's alleged failure to correct the representations of the prosecutor and trial court. However, the language used by the trial court and the prosecution during discussion of the plea offer made clear that these guidelines were estimates. No explicit agreement was made regarding defendant's sentencing guidelines during the discussion of the prosecution's plea offer. The trial court merely asked the prosecution if she had an "idea" of what she "expect[ed]" the guidelines to be and, once the prosecution provided those guidelines, the prosecution never guaranteed their accuracy. Furthermore, after the prosecution's calculations were placed on the record, the trial court explicitly questioned defendant's understanding that he would "potentially" be sentenced using guidelines of 78 to 162 months. The parties' use of language like "potential" and "idea" are not legal jargon, and a

layperson like defendant should have been able to understand that these were estimates and not a specific guarantee of exact guidelines. As such, it was not unreasonable for counsel to not correct the statements of the prosecution and the trial court.

Additionally, the trial court offered defendant the chance to consult with his counsel regarding the nature of the proposed sentencing guidelines. Defendant did not take advantage of this offer and made clear his intention to proceed to trial without regard to his potential sentencing exposure. At this point, it would have been reasonable for defendant's counsel to assume that, given defendant's clear desire to proceed to trial, defendant understood the scope of the guidelines he faced, as well as the possibility of consecutive sentences. Because counsel's representation of defendant was not objectively unreasonable, this claim fails. *Blevins*, 314 Mich App at 351.

## III. OFFENSE VARIABLE (OV) 3 SCORING

On appeal, defendant argues that the trial court erred in scoring OV 3 at 10 points because the evidence affirmatively established that GS did not sustain bodily injury. We disagree.

### A. STANDARD OF REVIEW

"[A] scoring error is not appealable unless it was raised at or before sentencing." *People v Kimble*, 470 Mich 305, 313; 684 NW2d 669 (2004). Defendant did not challenge OV 3 before or at sentencing. "An unpreserved objection to the scoring of offense variables is reviewed for plain error." *People v Odom*, 276 Mich App 407, 411; 740 NW2d 557 (2007). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). To prove this third element, that the plain error affected substantial rights, the defendant must show prejudice by demonstrating that the plain error "affected the outcome of the lower court proceedings." *Id.* If all three elements are established, it is up to the discretion of the appellate court whether to reverse. *Id.* However, "[r]eversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id.* at 763-764 (quotation marks and citation omitted; second alteration in original).

### B. DISCUSSION

Under the federal and Michigan Constitutions, a criminal defendant is ensured the right to sentencing using accurate information. *People v Haugh*, 435 Mich 876, 876-877; 458 NW2d 897 (1990); US Const, Ams V, XIV; Const 1963, art 1, § 17. An inaccurate calculation of a defendant's sentencing guidelines range can be remedied by resentencing. *People v Underwood*, 278 Mich App 334, 337; 750 NW2d 612 (2008). Resentencing is required when an error in the calculation of the sentencing guidelines places defendant in a different minimum sentencing range. *People v Hutcheson*, 308 Mich App 10, 17; 865 NW2d 44 (2014).

"OV 3 addresses 'physical injury to a victim.' " *People v Teike*, 348 Mich App 520, 526; 19 NW3d 733 (2023), quoting MCL 777.33(1). The trial court must assess 10 points if "[b]odily injury requiring medical treatment occurred to a victim[.]" MCL 777.33(1)(d). If a victim suffered

"[b]odily injury not requiring medical treatment," the trial court must assess five points. MCL 777.33(1)(e). A score of zero points is required when no victim incurred physical injury. MCL 777.33(1)(f). In the context of conducting an analysis of whether to assess points under OV 3, this Court has explained that "bodily injury encompasses anything that the victim would, under the circumstances, perceive as some unwanted physically damaging consequence." *People v Lampe*, 327 Mich App 104, 112-113; 933 NW2d 314 (2019) (quotation marks and citation omitted). "The phrase 'requiring medical treatment' refers to the necessity for treatment and not the victim's success in obtaining treatment." *People v Cathey*, 261 Mich App 506, 513; 681 NW2d 661 (2004) (quotation marks and citation omitted).

We conclude that the trial court did not plainly err by assessing 10 points under OV 3.

The key question in this matter is whether GS's symptoms from the sexual assault perpetrated by defendant meet the requirements to score OV 3. As discussed previously, GS suffered from nausea at the time of her examination. Applying the broad definition of bodily injury laid out in *Lampe*, the nausea experienced by GS was a bodily injury under OV 3. *Lampe*, 327 Mich App at 112-113. Turning to the factor of "requiring medical treatment," GS was so affected by her nausea that she was prescribed the medication Zofran for its treatment. As Castello described GS's nausea as "persistent" enough to require the medication, this would satisfy the definition of "requiring medical treatment" utilized in *Cathey*, 261 Mich App at 513. Taken together, we conclude that the trial court did not plainly err in assessing 10 points under OV 3. Defendant has not established the required elements under the plain-error rule and therefore cannot avoid forfeiture of this claim of error.

## IV. SEX OFFENDER REGISTRATION

Defendant next contends that the lifetime registration requirement of the 2021 Sex Offenders Registration Act (SORA), MCL 28.721 *et seq*., constitutes cruel or unusual punishment. We disagree.

## A. STANDARD OF REVIEW

"To preserve a claim that the defendant's sentences were unconstitutionally cruel or unusual, the defendant must raise the claim in the trial court." *People v Burkett*, 337 Mich App 631, 635; 976 NW2d 864 (2021). Defendant did not raise this before the trial court or in his motion to vacate his convictions and sentence. The issue is therefore not preserved. *Id*. An unpreserved claim that a defendant's sentence is unconstitutionally cruel or unusual is subject to review for plain error. *People v Bowling*, 299 Mich App 552, 557; 830 NW2d 800 (2013). We apply the same standard set forth above.

## B. DISCUSSION

Under the federal Constitution, a criminal defendant is ensured the right to be free from cruel and unusual punishment. US Const, Am VIII. However, under the Michigan Constitution, "cruel *or* unusual punishment shall not be inflicted." Const 1963, art 1, § 16 (emphasis added). See also *People v Lymon*, 515 Mich 145, 159; 29 NW3d 58 (2024). As a result of the Michigan Constitution having a higher standard for reviewing punishments than the federal Constitution,

this Court has previously determined that "[i]f a punishment passes muster under the state constitution, then it necessarily passes muster under the federal constitution." *People v Benton*, 294 Mich App 191, 204; 817 NW2d 599 (2011) (quotation marks and citation omitted). We note that this Court has previously determined that "[s]tatutes are presumed to be constitutional, and the courts have a duty to construe a statute as constitutional unless its unconstitutionality is clearly apparent." *People v Dipiazza*, 286 Mich App 137, 144; 778 NW2d 264 (2009) (quotation marks and citation omitted). As such, the party challenging the constitutionality of the statute bears the burden of proving it unconstitutional. *People v Sadows*, 283 Mich App 65, 67; 768 NW2d 93 (2009).

A recent decision of our Supreme Court addressed the exact question at issue in this case. *People v Kardasz*, ___ Mich ___, ___; ___ NW3d ___ (2025) (Docket No. 165008); slip op at 1. The 2021 SORA requires that certain convicted offenders register as sex offenders and comply with the mandatory reporting requirements for the remainder of their lives. MCL 28.723(1)(a); MCL 28.725(13). In *Kardasz*, the defendant was convicted in a jury trial of first-degree criminal sexual conduct for the sexual assault of his five-year-old daughter. *Kardasz*,___ Mich at ___; slip op at 2. Similar to the present matter, the defendant in *Kardasz* was required to comply with the requirements of SORA for the remainder of his life as part of his sentence. *Id*. at ___; slip op at 2. On appeal, the defendant in *Kardasz* brought both a facial and as-applied challenge to the constitutionality of Michigan's SORA law under the Michigan Constitution's prohibition of "cruel or unusual punishment." *Id*. at ___; slip op at 2. The Court analyzed this claim under a four-prong test to discern whether the punishment was grossly disproportionate, considering the following:

> (1) the severity of the sentence relative to the gravity of the offense; (2) sentences imposed in the same jurisdiction for other offenses; (3) sentences imposed in other jurisdictions for the same offense; and (4) the goal of rehabilitation, which is a criterion specifically rooted in Michigan's legal traditions. [*Id*. at ___; slip op at 33, citing *People v Bullock*, 440 Mich 15, 34-35 n 17; 485 NW2d 866 (1992).]

Because the defendant in *Kardasz* was a Tier III offender, the Court focused its analysis on that category of offenders. *Kardasz*, ___ Mich at ___; slip op at 34. First, the Court concluded that Tier III presented "particularly grave offenses and a relatively moderate punishment, which we do not find to be excessive." *Id*. at ___; slip op at 35. Next, the Court concluded that the penalty imposed was not disproportionate to those imposed for other offenses in Michigan or for similar offenses in other states. *Id*. at ___; slip op at 36-40. Turning to the final *Bullock* factor, the Court stated that "[g]iven that SORA does not support rehabilitation, this factor favors a finding of gross disproportionality." *Id*. at ___; slip op at 41.

Taken together, our Supreme Court ultimately concluded that "[w]hile the 2021 SORA is punishment, we do not find that its requirements are cruel or unusual, either under the facial challenge brought here or as applied to defendant." *Id*. at ___; slip op at 1. The Court acknowledged that, "[o]n balance, the 2021 SORA is not cruel or unusual punishment either in all instances or as applied to defendant." *Id*. at ___; slip op at 41. Specifically, the Court weighted heavily the fact that the defendant in *Kardasz* was a "Tier III" offender under the SORA and "committed the most elevated registrable offense and has not provided evidence to support a claim that lengthy registration requirements are not appropriate relative to his individualized level of risk of reoffending." *Id*. at ___; slip op at 41-42.

Turning to the instant case, we conclude that SORA's requirement mandating defendant's lifetime registration as a sexual offender does not constitute cruel or unusual punishment. Defendant's actions and subsequent conviction closely mirror those of the defendant in *Kardasz*. *Id*. at ___; slip op at 1-4. In addition, an individual convicted of third-degree criminal sexual conduct is also considered a Tier III offender under the definition in the 2021 SORA. MCL 28.722(u)(*ii*) and (v)(*iv*). The Supreme Court of Michigan definitively answered in *Kardasz* that the application of the 2021 SORA mandatory registration requirement to Tier III offenders was constitutional. *Id*. at ___; slip op at 1-2, 42. Defendant's sentence including the SORA registration requirements is not cruel or unusual under the Michigan Constitution.

Finally, we note that defendant asserted in his brief that he seeks to assert both "as applied and facial challenge[s] to the constitutionality of 2021 SORA." While defendant asserted that he intends to bring an as-applied challenge along with his analysis of the constitutionality of SORA, defendant does not develop his as-applied challenge further. "Failure to brief an issue on appeal constitutes abandonment." *People v McGraw*, 484 Mich 120, 131 n 36; 771 NW2d 655 (2009). This Court has previously found that "[a]n appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority." *People v Kelly*, 231 Mich App 627, 640–641; 588 NW2d 480 (1998). Here, defendant's brief solely presents his argument regarding the alleged facial unconstitutionality of SORA and illustrates no attempt to analyze how SORA was unconstitutional as applied to his own sentence. As a result, defendant has failed to brief his as-applied challenge on appeal, and it is abandoned. And, as the as-applied challenge has been abandoned, defendant has not challenged the actions of the trial court, and we decline to continue to analyze this issue under *Carines* for plain error.

Affirmed.

/s/ James Robert Redford
/s/ Randy J. Wallace
/s/ Andrew J. Lievense